### STATE OF CONNECTICUT *v.* FLORIAN BANGULESCU (AC 21881)

Bishop, Mihalakos and Dupont, Js.

Argued April 30—officially released October 21, 2003

*Michael Stone*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Paul J. Ferencek*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Florian Bangulescu, appeals from the judgments[1] of conviction, rendered after a jury trial, of issuing a bad check in violation of General Statutes § 53a-128 (a) (1), forgery in the second degree by completion of a written instrument that he knew to be forged in violation of General Statutes § 53a-139 (a) (1), two counts of forgery in the second degree by possession of a written instrument that he knew to be forged in violation of General Statutes § 53a-139 (a) (1), credit card theft in violation of General Statutes § 53a-128c (b) and possession of burglar's tools in violation of General Statutes § 53a-106. On appeal, the defendant advances the following claims: (1) the charges brought against him should have been dismissed because the warrant authorizing his arrest was defective;[2] (2) the trial court violated his federal and state due process rights at his arraignment by failing to advise

[1] We note that the defendant was charged in two files pursuant to two separate informations. Each information presented several counts. The first information consisted of charges of (1) issuing a bad check, (2) forgery in the second degree by completion of a written instrument the defendant knew to be forged and (3) forgery in the second degree by possession of a written instrument the defendant knew to be forged. The second information consisted of charges of (1) forgery in the second degree by possession of a written instrument the defendant knew to be forged, (2) credit card theft and (3) possession of burglar's tools. The cases were consolidated for trial, and the appeal from both judgments has been filed as a consolidated appeal.

[2] In addressing the first claim, we also address the allied claim raised by the defendant that he was subject to an illegal search and seizure in violation of his federal and state constitutional rights because the search was incidental to an unlawful arrest. See footnote 3.

him of his constitutional rights as well as the charges against him; (3) the court violated his federal and state constitutional rights to counsel when it allowed him to waive counsel without conducting a proper canvass; and (4) the court violated his federal and state constitutional rights to a fair trial before an impartial jury by failing to conduct a proper investigation into alleged juror misconduct. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. In the winter of 2000, the Darien police department began investigating the recurring fraudulent activities of the defendant and another person involving Summit Bank. Pursuant to the investigation, a warrant was issued for the defendant's arrest on February 2, 2000. Subsequently, the Darien police received a tip from the New York City police department, which had been investigating a similar case involving the defendant, that the defendant might have been a patron of Mailboxes, Etc., in Norwalk. Thereafter, on the morning of March 29, 2000, Ray Osborne, a detective with the Darien police department, confirmed that the defendant frequented the store.

Osborne returned to the store later that afternoon and, while sitting in a police vehicle in the parking lot, observed the defendant enter the store. As the defendant left the store, he was arrested by Osborne pursuant to the warrant issued on February 2, 2000. At that juncture, Osborne observed the defendant remove two credit cards from his pocket and throw them into a nearby trash can. Retrieving the cards, Osborne noted that one was a Telebank debit card and the other a Capitol One Visa card. Neither was in the defendant's name. Additionally, the police searched the defendant's automobile incidental to his arrest. The search yielded various tools used in picking locks.

On June 14, 2000, the defendant pleaded not guilty and elected a jury trial. Before trial, the defendant was represented by two successive public defenders. The defendant's first attorney was appointed on March 30, 2000, and withdrew on June 14, 2000. Thereafter, a second public defender, David J. Marantz, was appointed to represent the defendant, but pursuant to the defendant's motion, the court dismissed Marantz on November 6, 2000. At the same time, the court granted the defendant's motion to represent himself with the aid of Marantz as standby counsel. Consequently, the defendant represented himself throughout the entire trial. At trial, the defendant neither testified nor offered any witnesses. He was convicted as charged. This appeal followed. Additional facts will be provided as necessary.

## I

The defendant's first claim is that the warrant authorizing his arrest was defective, as it contained a false material factual statement, and, therefore, his arrest was illegal.

The following additional facts are necessary to our resolution of the defendant's first claim. The defendant was arrested by Osborne pursuant to an arrest warrant signed on February 2, 2000, by *Kavenewsky, J.* The warrant was supported by a three page affidavit from Osborne that included a statement that he had obtained a photograph of the defendant and had shown it to John T. Mickle, the manager of Summit Bank. The affidavit further stated that Mickle had confirmed that the person in the photograph was the defendant. At trial, on February 1, 2001, on cross-examination by the defendant, Mickle testified that he had never met the defendant, nor had any law enforcement officer shown him a photograph of the defendant.

On July 31, 2000, the defendant filed a motion to dismiss the charges for, inter alia, lack of probable cause to issue the arrest warrant. The defendant filed another motion to dismiss, dated January 29, 2001, on the ground that he had been arrested without an arrest warrant. In neither instance did the defendant include with his motion a statement of the supporting factual and legal basis. On appeal, however, the defendant claims that his arrest was illegal because there was no arrest warrant and because the charges do not appear in the warrant application, and, he now raises as an additional ground for dismissal that the affidavit in support of his arrest contained materially false allegations. The trial court denied both motions without written memoranda. Subsequently, on May 6, 2002, the court issued an articulation regarding the July 31, 2000 motion.

As to the motion to dismiss for lack of probable cause, the court observed that the defendant had failed to provide either a factual or legal basis in support of the motion, as required by Practice Book § 41-6. Additionally, as noted by the court in its articulation of its denial of the motion, because the defendant was arrested pursuant to an arrest warrant, he was not entitled to file a motion to dismiss claiming insufficiency of the evidence pursuant to Practice Book § 41-8 (5). See Practice Book § 41-9.

The defendant's claim that the arrest warrant was incomplete and therefore a nullity is devoid of merit. The defendant asserts that the arrest warrant was invalid because it did not state the charges against him. The relevant rule of practice, Practice Book § 36-3, requires in relevant part that the warrant "state the offense charged . . . ." In this case, the information that accompanied the warrant clearly stated the charges against the defendant. Additionally, as the record discloses, the warrant and the information comprise two

sides of the same piece of paper. Our review of the warrant and the information lead us to the conclusion that the charging documents were complete and proper. We find no basis for determining that the defendant was unlawfully arrested.[3]

The defendant seeks review[4] of his claim that the affidavit in support of his arrest warrant contained a false allegation and, therefore, that the motion to dismiss should have been granted. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). He claims that *Golding* review is warranted because the claim is of constitutional magnitude.

In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Jenkins*,

---

[3] Having concluded that the defendant was lawfully arrested, we need not reach his subordinate claim that the items seized incidental to his arrest should have been suppressed on the basis of his claim that his arrest was unlawful. See footnote 2.

[4] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

70 Conn. App. 515, 526 n.9, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002).

The defendant's claim regarding the adequacy of the arrest warrant is that the affidavit accompanying the warrant contained a materially false allegation. That assertion is based on a comparison of the trial testimony of the bank manager, Mickle, and the affidavit of Detective Osborne. In the affidavit, Osborne stated that he had shown a photograph of the defendant to Mickle, who confirmed that it depicted an individual he knew to be the defendant. During his trial testimony, however, Mickle stated that Osborne had not shown him a photograph of the defendant. The defendant now claims that the contradiction between Mickle's testimony and Osborne's affidavit reveals that the affidavit was false. On that basis, he believes that the charges against him should have been dismissed.

To the extent that the defendant's claim has been brought pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), it is unavailing. Pursuant to *Franks*, if a defendant wants a hearing to challenge the truthfulness of an affidavit underlying a warrant, he must (1) make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; id., 155–56; and (2) show that the allegedly false statement was "necessary to the finding of probable cause . . . ." Id., 156.

In the present case, when confronted with Mickle's testimony at trial, the defendant did not seek a *Franks* hearing;[5] therefore, the court was not given the opportu-

---

[5] Even if the defendant had sought and obtained a *Franks* hearing, and had been successful in persuading the court of the existence of a violation, such a finding alone would not have justified dismissal of the charges because "[a] *Franks* violation in an affidavit supporting an arrest warrant does not entitle a defendant to the dismissal of the charges for which he was arrested." *State* v. *Patterson*, 213 Conn. 708, 715, 570 A.2d 174 (1990).

nity to determine whether Mickle's inaccurate statement was made "knowingly and intentionally, or with reckless disregard for the truth"; id., 155; or whether it was "necessary to the finding of probable cause . . . ." Id., 156. As a consequence, the defendant's first claim must fail, as it does not meet the threshold requirement of *Golding* that the record be adequate for appellate review. *State* v. *Golding*, supra, 213 Conn. 239–40.

## II

We next turn to the defendant's claim that his due process rights were violated because he did not receive a proper arraignment. Specifically, the defendant contends that his individual arraignment was improper because (1) the court failed to ask him if he had heard the collective rights advisement and (2) he was not properly informed of the charges against him.

The following additional facts are necessary to our resolution of the defendant's claim. The transcript reflects that on March 30, 2000, at the commencement of court, the court collectively advised all court attendees of their rights and, later in the day, collectively informed all the detainees of their rights while they were waiting in the courtroom to be arraigned. We therefore infer that the defendant was present at a collective advisement. Subsequently, the defendant was individually arraigned at which time he was represented by a public defender. During the arraignment, the court did not ask the defendant whether he had heard and understood the collective rights advisement. Instead, the state immediately presented the charges against the defendant. The state indicated that the defendant had three charges pending: (1) a warrant for forgery and attempt to commit larceny by issuing a bad check; (2) a warrantless arrest for possession of stolen credit cards, forgery and possession of burglar tools; and (3) a war-

rantless arrest for being a fugitive from New York on a felony forgery and larceny charge. With those additional facts, we now turn to the defendant's claim.

The defendant requests review under the guidelines set forth in *State* v. *Golding*, supra, 213 Conn. 239–40. As such, he must "allege, minimally, a violation of a constitutional right." *State* v. *Mazzeo*, 74 Conn. App. 430, 438, 811 A.2d 775, cert. denied, 263 Conn. 910, 821 A.2d 767 (2003). We must first, therefore, determine if the defendant's claim is of constitutional magnitude alleging a violation of a fundamental right.

The defendant presents the following two arguments in support of his claim that he was not arraigned properly and, thus, was deprived of due process of law: (1) he was not asked if he heard the collective rights advisement; and (2) he was not informed properly of the charges against him. We will address only the first argument, as the second argument is patently meritless.[6]

The defendant contends that the arraignment was improper, in violation of Practice Book § 37-4, because the trial judge did not ask him whether he heard the collective rights advisement.[7] The defendant accurately

---

[6] The defendant argues that the court did not comply with Practice Book § 37-7 because (1) the prosecutor read an additional charge from the arrest warrant (attempt to commit larceny), (2) he was not told the specific statutory citation for the charges, (3) the charges were not read by the court, but rather by the prosecutor and (4) such charges were not read to the defendant directly. Section 37-7 simply provides, however, that "[u]pon being read the charges against him or her contained in the information or complaint, the defendant shall enter a plea of not guilty, guilty, or nolo contendere." The defendant was arraigned on the state's original information, which included a charge of attempt to commit larceny. Further, there is no such requirement that the defendant be read the charges with the specific statutory citations, nor is there an explicit requirement that only the judge may read such charges and, in doing so, must read them directly to the defendant. Thus, Practice Book § 37-7 was not violated.

[7] Practice Book § 37-4 provides: "If the judicial authority shall have collectively informed all defendants of their rights at the opening of court, it shall preface the individual arraignment of each by asking whether he or she heard and understood the collective statement."

points out that this rule of practice was violated. It is axiomatic, however, that *Golding* review is limited to constitutional claims. Thus, "we will discuss any violation of the rules of practice only insofar as it is relevant to the defendant's constitutional claim; any unpreserved claim alleging a violation of the rules of practice has no independent significance for purposes of appellate review." *State* v. *Fernandez,* 254 Conn. 637, 648 n.18, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001).

We begin our analysis with the observation that not every deviation from the specific requirements of the rules of practice presents an issue of constitutional magnitude. For example, when a defendant claimed that he should have been able to withdraw his guilty plea because the court failed to follow the requirements of the rules of practice regarding the plea canvass, we stated that "[t]he determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances [and] the plea may satisfy constitutional requirements even in the absence of literal compliance with the prophylactic safeguards of [Practice Book §§ 39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Lopez,* 77 Conn. App. 67, 74, 822 A.2d 948, cert. granted on other grounds, 265 Conn. 903, 829 A.2d 421 (2003). Thus, to obtain *Golding* review of a violation of a rule of practice, a defendant must allege that the violation was of constitutional magnitude and prejudiced his right to a fair trial. See *State* v. *Dennis,* 30 Conn. App. 416, 621 A.2d 292, cert. denied, 226 Conn. 901, 625 A.2d 1376 (1993).

In this case, the defendant makes no such due process claim. Aside from his correct assertion that the court did not ask him whether he had heard and understood the collective rights advisement, the defendant makes no claim on appeal that he was in any way prejudiced by the court's failure to comply strictly with the require-

ments of Practice Book § 37-3. Absent a showing of specific harm to a constitutionally protected right, the defendant's claim fails to satisfy the third prong of *Golding*, which requires that the alleged violation "clearly [exist] and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240.

### III

The defendant's third claim is that the court violated his federal constitutional right to counsel by failing to canvass him adequately to determine if he was making a knowing, voluntary and intelligent waiver of such right when he sought to represent himself. Specifically, the defendant asserts that the court failed to comply with Practice Book § 44-3 during the canvass.[8] According to the defendant, the court (1) failed to make an inquiry into his intelligence and capacity to appreciate the consequences of his decision to represent himself, and (2) inadequately explained the nature of the charges and proceedings against him. See Practice Book § 44-3 (2) and (3).[9] We disagree.

---

[8] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[9] "The multifactor analysis of Practice Book § 44-3 is designed to assist the court in determining whether the defendant actually made the decision to waive his right to counsel in a knowing, voluntary and intelligent fashion." *State* v. *Porter*, 76 Conn. App. 477, 492 n.14, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). The defendant in this case, however, does not claim that the canvass failed to comply with all the subparts of Practice Book § 44-3. Rather, the substance of the defendant's claim is that the

Once again, the defendant requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. With regard to the first two prongs of *Golding*, we conclude that the record is adequate for review and that the defendant's right to counsel is clearly of constitutional magnitude. The defendant's claim fails to satisfy *Golding*'s third prong, however, because the court's canvass was adequate to conclude that the defendant had knowingly and intelligently waived his right to counsel.

The following additional facts are germane to our discussion of the defendant's claim. On August 15, 2000, the state filed a motion for an evaluation of the defendant's competency to stand trial pursuant to General Statutes § 54-56d. The motion was granted, and the defendant underwent a competency evaluation by a team from the department of mental health and addiction services. The team issued a comprehensive report on September 8, 2000, which concluded that the defendant "[was] able to understand the proceedings pending against him and [was] able to assist in his defense." The court was given that report and found the defendant competent to stand trial.

Less than two months later, on November 7, 2000, the defendant appeared before the same trial judge and sought to dismiss his attorney and to represent himself. Upon hearing that request, the court first required that the defendant and his attorney discuss the decision, as the court deemed it "a very foolish thing to do."

canvass failed to comply with two of the requirements of Practice Book § 44-3, specifically, (2) and (3). Section 44-3 subparts (2) and (3) require, respectively, the court to satisfy itself that the defendant possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself and comprehends the nature of the charges and proceedings, and the range of permissible punishments. Accordingly, we limit our review of the defendant's claim to determine whether the arguments raised preclude a finding of compliance with Practice Book § 44-3 (2) and (3), and, in turn, whether such a determination would preclude a finding of a knowing and intelligent waiver.

Subsequent to the discussion with his attorney, the defendant presented the court with a written motion to dismiss his counsel and to represent himself. Prior to granting the motion, however, the court conducted a limited colloquy with the defendant regarding the matter.[10] The court warned the defendant about the

[10] The following colloquy, in relevant part, occurred:

"[Defense Counsel]: Judge, [the defendant] has indicated to me that he would like to represent himself, and he has made a motion to dismiss me as his attorney. He has that motion with him today, and he also wants to be heard on his own motion to dismiss.

"The Court: All right, before I do this, you're making a very serious decision in your matter. The attorney standing next to you has graduated from college, went to law school, has been in the practice of law for a substantial period of time representing a multitude of people involved with crimes. You, I assume, did not go to law school. I assume you may have gone to some school at some point. If you represent yourself, you've got to handle the trial, the jury selection, the cross-examination of witnesses. You've got to arrange for witnesses to be called. You've got to file particular motions. I will appoint counsel to act as standby attorney if you're going to represent yourself. That means he's to assist you in court, to give you whatever advice concerning court proceedings necessary, but that's about the limit of his ability to represent you, perhaps to help you frame correct questions and so on. All right, you understand that these charges against you, the charge of issuing a bad check—what was the amount of the check?

"[The Prosecutor]: There were two checks, Your Honor, or three, actually. One was for $4000. The other was for $3400, and there was a third check. I don't have the figure at the tip of my tongue at this point. I don't have my files before me, Your Honor. They're downstairs. My understanding is [that] we were just going to continue these.

"The Court: So, issuing a bad check over $1000 carries with it a possible maximum sentence of five years in state prison for each check that might have been issued if the state can establish it beyond a reasonable doubt. You apparently are also charged with forgery in the third degree, one, two, three counts there. Forgery in the third degree carries with it as a possible maximum sentence six months in jail or [a] $1000 fine in each one of those. So, you've—in that one file—and you also were charged in that file with attempted larceny in the fifth degree, if I'm reading the docket sheet correctly, and . . . larceny in the fifth degree, or attempted larceny, carries with it six months. So, in that one file, there's a possible maximum sentence of five years, six years, seven years to be tried. You're charged on another file with forgery in the third degree, which carries with it six months. You're charged with credit card thefts in violation of General Statutes § 53a-128c. That carries with it—each of those carries with it a possible maximum sentence of one year in state's prison. You're charged with possession of

seriousness of his decision, described the nature of

burglary tools. Are you pressing that charge as well?

"[The Prosecutor]: At this point, we are, Your Honor.

"The Court: That's a one year sentence so that the possible sentences there are three years and six months. So, the possible sentence if you were convicted of all of those charges would be ten years and six months in state prison. In addition, there's an extradition proceeding pending against you where the state of New York has requested your return to stand trial there on various alleged charges. That's not a crime, that's just a request by the state of New York to return you there. So, you understand what the possible maximum sentence could be?

"[The Defendant]: Yes, I do, Your Honor.

"The Court: All right, are you prepared to undertake the voir dire?

"[The Defendant]: Yes, I am, Your Honor.

"The Court: Pardon me, do you understand what voir dire means?

"[The Defendant]: It means the actual [commencement] of trial, the swearing in [of] the first witness, the examination of the jury.

"The Court: Nice try, you're close. Well, the attorney can—have you spoken with your client about this decision?

"[Defense Counsel]: No, Judge, he just handed me, as we were in the back when we passed the matter, he handed me a motion to dismiss counsel, and he asked that he be heard on that motion as well as his motion to dismiss.

"The Court: Are you serving as a public defender or private counsel in this matter?

"[Defense Counsel]: I was appointed to represent [the defendant], Judge.

"The Court: Has he done this before to anybody?

"[Defense Counsel]: There was another attorney on the case before me, Judge.

"The Court: Okay, so you're not going to get another attorney appointed for you. You can either represent yourself or be represented by this counsel during the course of the trial. Do you understand that as well?

"[The Defendant]: Yes, Your Honor.

"The Court: All right, you understand the implications of representing yourself. You can't later on complain and say you would—well, you could change your mind, I suppose, later on if you wished to. All right, let's see the motion to dismiss, madam clerk.

"[Defense Counsel]: There's a motion to dismiss counsel, Judge, and there's a motion to dismiss that was filed by [the defendant] on October 17.

"The Court: All right.

"[The Defendant]: Do you have my motion, clerk?

"[Defense Counsel]: Madam clerk, do you have that motion?

"[The Clerk]: Yes.

"The Court: I have the motion to dismiss counsel.

"[Defense Counsel]: That was just handed to me in the back room, Judge, right before we walked back out. But [the defendant] also filed a motion that he prepared himself, dated October 17. If you don't have it, I have a spare.

the proceedings, assured the defendant that standby counsel would be appointed to assist him in and out of court, recited the charges facing the defendant and described the maximum penalties involved. Upon completion of the colloquy, the defendant reaffirmed his desire to represent himself, and the court allowed him to do so. With those additional facts, we now review the defendant's third claim.

"It is settled law that [b]oth the federal constitution and our state constitution afford a criminal defendant the right to [forgo] the assistance of counsel and to choose instead to represent himself or herself at trial. As a matter of federal constitutional law, the right to self-representation is premised on the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged. . . . The Connecticut constitution is more explicit, stating directly that [i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." (Internal quotation marks omitted.) *State* v. *Rose*, 73 Conn. App. 702, 706–707, 809 A.2d 534, cert. denied, 262 Conn. 927, 814 A.2d 382 (2002).

"Although it may be settled law that a criminal defendant has an absolute right to self-representation, that right is not self-executing. A trial court in this state must satisfy itself that several criteria have been met before a criminal defendant properly may be allowed to waive counsel and proceed pro se. . . . Those criteria include a determination by the court (1) that the

---

"The Court: All right, I hope you're telling whoever's telling you what to do up at jail that you're going to have to serve the time. He doesn't have to serve time when he's giving you this nonsense. None of the grounds that you have here are valid, but I'll allow you to represent yourself. Is that what you want to do?

"[The Defendant]: Yes, Your Honor.

"The Court: All right, the record may indicate that I'm permitting you to represent yourself. I'm going to appoint counsel as standby counsel. He'll explain what that means. Now, let's see the motion to dismiss."

defendant is competent to waive counsel, and (2) that his waiver is knowing, intelligent and voluntary." (Citation omitted; internal quotation marks omitted.) Id., 707. We address each determination separately.

## A

"A defendant is deemed competent to waive counsel when it is shown that he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) Id. When a defendant is found competent to stand trial, as a matter of law, a court is bound to rule that he is also competent to waive the right to counsel. *State* v. *Day*, 233 Conn. 813, 825, 661 A.2d 539 (1995). In the present case, the same judge found the defendant to be competent to stand trial less than two months prior to permitting the defendant to waive his right to counsel. Consequently, the court had an adequate basis to make a proper determination that the defendant was competent to waive his right to counsel. See id., 825–26.

## B

"After a determination by the court that a criminal defendant is competent, its next task is to determine whether his decision to waive the right to counsel is knowing, intelligent and voluntary. . . . A defendant has knowingly and intelligently waived the right to counsel if the trial judge finds that he (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made

aware of the dangers and disadvantages of self-repre-
sentation." (Internal quotation marks omitted.) *State* v.
*Porter*, 76 Conn. App. 477, 496, 819 A.2d 909, cert.
denied, 264 Conn. 910, 826 A.2d 181 (2003); see also
Practice Book § 44-3.

"[T]he determination of whether there has been an
intelligent waiver of the right to counsel must depend, in
each case, upon the particular facts and circumstances
surrounding that case, including the background, expe-
rience, and conduct of the accused. . . . This
important decision rests within the discretion of the
trial judge." (Internal quotation marks omitted.) *State*
v. *Rose*, supra, 73 Conn. App. 706. Our task, therefore,
is to determine whether the court abused its discretion
in allowing the defendant to discharge his counsel and
to represent himself.

The defendant first argues that his waiver was not
knowing and intelligent because the court failed to
make an inquiry into his intelligence and capacity to
appreciate the consequences of his decision to repre-
sent himself, as required by Practice Book § 44-3 (2).
In particular, the defendant asserts that given the fact
that he is of foreign descent, the waiver was neither
knowing nor intelligent because the court (1) failed to
make an inquiry into the nature or extent of his educa-
tion and (2) failed to inquire into the extent of his
literacy. We are not persuaded.

This court has stated that "[w]hile [a] defendant . . .
does not possess a constitutional right to a specifically
formulated canvass . . . [h]is constitutional right is
not violated as long as the court's canvass, whatever
its form, is sufficient to establish [in the court's opinion]
that the defendant's waiver was voluntary and knowing.
. . . In other words, the court may accept a waiver of
the right to counsel without specifically questioning a
defendant on each of the factors listed in Practice Book

§ 961 [now § 44-3] if the record is sufficient to establish that the waiver is voluntary and knowing. . . . [A] record that affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, supra, 76 Conn. App. 496–97. Applying those principles to the present case, we find that the court did not abuse its discretion when it determined that the defendant's decision to represent himself was knowing, intelligent and voluntary.

First, the record reflects that on November 7, 2000, the court encountered an apparently competent and knowledgeable defendant. In fact, the defendant himself admits that he speaks English competently, had the ability to converse with the court and exhibited a degree of articulation during the court proceedings prior to the canvass of November 7, 2000. Furthermore, the court was able to rely on the information in the previously provided competency report. As mentioned, the judge who conducted the canvass was the same judge who had presided over the competency determination less than two months earlier. The competency evaluation detailed the defendant's personal history, which included, inter alia, his educational background and work and psychiatric history.[11] Thus, prior to the canvass, the judge not only had the opportunity to observe the defendant, but had a basis of knowledge of the defendant that had been acquired during a prior review of the defendant's competency evaluation.

Next, the defendant argues that his waiver was not knowing and intelligent because the court failed to ask

---

[11] The competency evaluation indicates that the defendant attended high school until the tenth grade in Europe and subsequently obtained his general equivalency diploma while living in New York.

him if he comprehended the nature of the charges and proceedings, the range of permissible punishments and any additional facts essential to a broad understanding of the case in compliance with Practice Book § 44-3 (3). Specifically, the defendant claims that the court failed to discuss or to review the following: (1) what the state intended to prove with reference to each charge; (2) any possible defenses to those charges; (3) how each charge related to one another; (4) the minimum sentences implicated; and (5) the case against him as a whole. Again, we disagree.

"In general, a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 76 Conn. App. 498. Furthermore, the defendant need not "be specifically informed of the particular elements of the crimes charged before being permitted to waive counsel and proceed pro se. In fact . . . perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver. . . . A discussion of the elements of the charged crimes would be helpful, *and may be one of the factors involved in the ultimate determination* of whether the defendant understands the nature of the charges against him. A description of the elements of the crime is not, however, a sine qua non of the defendant's constitutional rights in this context. Indeed, in our cases we have approved of a defendant's assertion of the right to proceed pro se where the record did not affirmatively disclose that the trial court explained the specific elements of the crimes charged to the defendant as long as the defendant understood the nature of the crimes charged. . . . In each of those cases, we concluded that the defendant had validly waived his right to counsel, although none of those decisions indicated that the defendant had been expressly apprised

of the elements of the crimes charged." (Emphasis in original; internal quotation marks omitted.) Id., 498–99.

Moreover, the record indicates that the court was satisfied that prior to the waiver of counsel, the defendant comprehended the nature of the charges and proceedings and understood the range of permissible punishments. Therefore, the court concluded that the defendant's waiver was both knowing and intelligent. The court had, for review, the competency report dated September 8, 2000, which stated in relevant part that the defendant (1) had recounted the charges pending against him, the components of the charges as well as the possible penalties he could incur, (2) gave the clinical team a rational and coherent understanding for his defense strategy, and (3) exhibited an adequate understanding of the nature of judicial proceedings as well as the roles of the courtroom personnel and courtroom procedures. Furthermore, the court engaged in a discussion with the defendant to determine for itself whether he was competent and whether his waiver was valid. The court stated the charges and explained the maximum punishments the defendant faced, and the defendant, in turn, stated that he understood the punishments. Finally, the court knew the defendant had been represented by counsel and had had the chance to confer with counsel before seeking counsel's dismissal.

In sum, our review of the record reveals that the court did not abuse its discretion when it decided that the defendant's decision to waive his right to counsel was intelligent, knowing and voluntary. On that basis, we conclude that the defendant was not deprived of his right to counsel by the actions of the court in permitting him to represent himself. Accordingly, that claim also must fail.

### IV

Finally, the defendant claims that the court's failure to conduct a preliminary inquiry into juror misconduct

deprived him of his federal and state constitutional rights to a fair trial conducted in the presence of an impartial jury. We disagree.

The following additional facts are necessary to our resolution of the defendant's final claim. The trial commenced on February 1, 2001. The next afternoon, on Friday, February 2, as the court recessed for the day, a member of the jury panel approached the prosecutor in the courtroom and handed him a Fortune magazine article regarding the chief executive officer of Mailboxes, Etc. According to the prosecutor, the juror presented the article in the presence of the defendant and stated, "Oh, I have an article on your favorite business." The prosecutor claimed that he did not respond, but that he did show the article to the defendant. The following Monday, the prosecutor notified the court of the incident and requested that the article be made a court exhibit. The court complied. The court then asked the defendant and his standby counsel whether they had anything to say regarding the matter. Both indicated that they did not.[12]

The defendant contends that he was deprived of a fair trial before an impartial jury when the court violated the mandates of *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc), as it failed to conduct a preliminary inquiry into jury misconduct. Specifically,

---

[12] The following colloquy occurred:

"[The Prosecutor]: I just want to make a record of it. I'm not claiming that there's partiality here. I don't believe [the defendant] is, either. I would ask that it simply be made a court exhibit.

"The Court: Yes, it will just become a court exhibit. All right, do you have anything, Mr. Bangulescu?

"[The Defendant]: No, that's fine.

"The Court: Standby counsel?

"[Standby Defense Counsel]: No, Your Honor, I just think that—so how many alternates are we using, is it one at this time?

"The Court: I have no idea. You'd have to check . . . .

"[The Prosecutor]: We're using one alternate."

the defendant argues that the court abused its discretion when it failed to inquire as to the identity of the juror in question, the activities of the juror and any communication the juror might have had with fellow jurors with reference to the activities at issue. We are not persuaded.

The defendant has not properly preserved his claim for appeal, as it was not "distinctly raised at the trial . . . ." Practice Book § 60-5. To the extent, however, that the defendant raises claims he failed to raise at trial, he requests review under the guidelines set forth in *State* v. *Golding,* supra, 213 Conn. 239–40. With regard to the first two prongs of *Golding,* we conclude that the record is adequate for review and that the defendant's right to an impartial jury is clearly of constitutional magnitude. The defendant's claim fails to satisfy *Golding's* third prong, however, because the court's inquiry into alleged juror misconduct did not clearly deprive the defendant of a fair trial.

"Our jurisprudence on the issue of the right to an impartial jury is well settled. Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . .

"In *State* v. *Brown,* supra, 235 Conn. 526, our Supreme Court exercised its supervisory power over the administration of justice to require a trial court to conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case, regardless of whether an inquiry is requested by counsel. Although the form and scope of such an inquiry lie within a trial court's discretion, the court must conduct some type of inquiry in response

to allegations of jury misconduct. That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto. . . .

"[A] trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations of jury misconduct: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury, which will vary with the seriousness and the credibility of the allegations of jury misconduct; and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system. . . .

"Any assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jury [bias or] misconduct will necessarily be fact specific. No one factor is determinative as to the proper form and scope of a proceeding. It is the trial court that must, in the exercise of its discretion, weigh the relevant factors and determine the proper balance between them. . . . Consequently, the trial court has wide latitude in fashioning the proper response to allegations of juror bias. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion. . . . Although we recognize that trial [c]ourts face a delicate and complex task whenever they

undertake to investigate reports of juror misconduct or bias . . . we nevertheless have reserved the right to find an abuse of discretion in the highly unusual case in which such an abuse has occurred. . . . Ultimately, however, [t]o succeed on a claim of [juror] bias [or misconduct] the defendant must raise his contention of bias [or misconduct] from the realm of speculation to the realm of fact. . . . Finally, when, as in this case, the trial court is in no way responsible for the alleged juror misconduct, the defendant bears the burden of proving that the misconduct actually occurred and resulted in actual prejudice." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 354–56, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

Applying those principles, we conclude that the defendant has failed to demonstrate that the inquiry conducted by the court was inadequate to safeguard his right to a trial before an impartial jury. The court was presented with the issue of juror misconduct on February 5, 2001, when the prosecutor brought to the court's attention the fact that a juror had handed him an article regarding the chief executive officer of Mailboxes, Etc. Once provided with the information and the article, the court entered the article into evidence as an exhibit, and when the court asked the defendant and his standby counsel whether they "had anything" to say, both replied that they did not. The court then went on to other issues without objection from either side.

The defendant claims that the court abused its discretion when it did not conduct a preliminary inquiry into the potential juror misconduct and that he therefore was denied a fair trial. In particular, the defendant asserts that the court should have inquired as to the identity of the juror in question, the activities of the juror and any communication the juror might have had

with fellow jurors with reference to the activities at issue. We do not agree.

In connection with its preliminary inquiry, the court listened to the prosecutor's description of the juror's conduct, made the article in question a court exhibit, and questioned the defendant and his standby counsel as to whether they had anything further to say regarding the matter. Neither the defendant nor standby counsel voiced any objections regarding the juror's conduct. Furthermore, besides mentioning Mailboxes, Etc., the article in question had no connection to the defendant's case. In *Brown*, the Supreme Court stated that "[t]here may well be cases, therefore, in which the trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel." *State* v. *Brown*, supra, 235 Conn. 528.

Accordingly, in light of the court's albeit cursory questioning of the defendant and standby counsel, and the defendant's failure to seek any additional questioning or investigation by the court despite opportunities to do so, we find that the court did not abuse its discretion in acting as it did, and, thus, a constitutional violation did not clearly exist. Contrary to the defendant's claim, we conclude that the question posed by the court to the defendant, standby counsel and the prosecutor adequately comported with the defendant's right to a trial by an impartial jury. The defendant's final claim, therefore, also fails under the third prong of *Golding*.

The judgments are affirmed.

In this opinion the other judges concurred.