## IN RE ASHLEY M.*
## (AC 24130)

Schaller, West and Mihalakos, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 17, 2003—officially released March 16, 2004

*Marcia McCormack,* for the appellant (respondent mother).

*Mary-Anne Ziewacz Mulholland,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

MIHALAKOS, J. The respondent mother[1] appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Ashley. On appeal, she claims that the court (1) improperly decided that she had not achieved a sufficient degree of personal rehabilitation within the meaning of General Statutes § 17a-112 (j) (3) (B) (i) as would encourage the belief that she could assume a responsible role in the life of her child within a reasonable time[2] and (2) abused its discretion by not considering facts subsequent to the filing of the petition by the petitioner, the commissioner of children and families (commissioner). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the respondent's appeal. The commissioner's involvement with the respondent and Ashley began in December, 1999, due to the respondent's abuse of cocaine and marijuana during her pregnancy. On January 4, 2000, the commissioner filed a petition alleging that Ashley, a newborn, was uncared

---

[1] The petition for the termination of parental rights filed by the commissioner of children and families was brought against both parents. The respondent father was defaulted for failure to appear on October 4, 2002. The petition was granted with respect to the father on the grounds of abandonment and no ongoing parent-child relationship pursuant to General Statutes § 17a-112 (j) (3). The father has not appealed. We therefore refer in this opinion to the respondent mother as the respondent.

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [for the termination of parental rights] filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

for and neglected. Temporary custody was granted to the commissioner that same day. On February 17, 2000, the court adjudicated Ashley neglected and uncared for and ordered protective supervision by the commissioner for twelve months. On February 27, 2001, the court opened and modified the prior disposition and committed Ashley to the custody of the commissioner. On December 14, 2001, the commissioner filed the petition at issue in this appeal to terminate the parental rights of Ashley's biological parents. The petition as to the respondent was premised on her failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i).

On January 10, 2002, the court extended Ashley's commitment to the commissioner on finding that efforts were no longer appropriate for the reunification of Ashley with the respondent.[3] On February 30, 2003, the court granted the petition to terminate the respondent's parental rights on the ground alleged.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. . . . In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal

---

[3] "Before the court may grant a petition to terminate parental rights on the ground of failure to rehabilitate, it must find by clear and convincing evidence that the department has made reasonable efforts to reunite the child with the parent." *In re Mariah S.*, 61 Conn. App. 248, 254, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001); General Statutes § 17a-112 (j) (1). "Although [n]either the word reasonable nor the word efforts is . . . defined by our legislature or by the federal act from which the requirement was drawn . . . [r]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Mariah S.*, supra, 255.

quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 250, 829 A.2d 855 (2003).

In the adjudicatory stage, the court determined that the petitioner had demonstrated by clear and convincing evidence that the respondent "has not achieved a status where she is more able to parent Ashley than she was at the time of Ashley's neglect and uncared for adjudication on February 17, 2000." The court also found that "[t]here is no evidence to conclude that rehabilitation into the role of a constructive parent could be achieved within a reasonable period of time."

After considering and making findings on each of the seven criteria articulated in General Statutes § 17a-112 (k),[4] the court concluded in the dispositional phase that termination of the respondent's parental rights was in the best interest of Ashley. The court stated that "Ashley's lack of permanency and the effects of that uncertainty no longer can be tolerated." The court therefore opined that Ashley's best interest would be served by the termination of the respondent's parental rights, thus allowing Ashley to be available for adoption by her foster mother, a maternal cousin of the respondent, under whose care Ashley has been since April, 2001. This appeal by the respondent ensued. Additional facts will be set forth as necessary.

I

This court is ever mindful of the gravity of the proceeding that may end in the termination of parental rights and results in the complete severance of the legal relationship, with all its rights and responsibilities,

---

[4] Courts must consider and make findings on the seven criteria listed in General Statutes § 17a-112 (k) before making a determination on a petition for termination of parental rights. See *In re Romance M.*, 229 Conn. 345, 354–55, 641 A.2d 378 (1994). The court concluded that the petitioner had factually established each of the criteria by clear and convincing evidence and, therefore, continued onto the dispositional phase of the inquiry.

between the child and the parent. See *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975).

With that in mind, we address the respondent's claim that the court improperly decided that the facts supported its conclusion that she had not achieved sufficient rehabilitation as mandated by § 17a-112 (j) (3) (B) as would encourage the belief that she could assume a responsible role in Ashley's life within a reasonable time. In support of that claim, she contends that the testimony offered by the social workers who had handled her case, as well as the court-appointed psychologist, did not constitute clear and convincing evidence of her failure to achieve sufficient rehabilitation. We disagree.

We first set forth the standard of review that guides our analysis. We apply the clearly erroneous standard in reviewing a trial court's finding that a parent has failed to achieve sufficient rehabilitation. See *In re Jennifer W.*, 75 Conn. App. 485, 498–99, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 499. We also recognize that "the trial court has an ability superior to our own to evaluate the evidence because of its firsthand opportunity to observe the parties and to hear their testimony." *In re Alissa N.*, 56 Conn. App. 203, 210, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791 (2000).

Failure to achieve a sufficient degree of personal rehabilitation is one of the seven statutory grounds on which parental rights may be terminated under § 17a-112 (j) (3) and is "found when a parent of a child who

has been found by the court to have been neglected fails to achieve such a degree of rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of the child." *In re Mariah S.*, 61 Conn. App. 248, 260–61, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001). "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Amneris P.*, 66 Conn. App. 377, 384, 784 A.2d 457 (2001).

The court relied on the testimony of Lisa Miller, Michelle Dunbar and Rushnee Verene-Penix, social workers with the department of children and families (department) who had worked with the respondent. They testified that the respondent did not visit Ashley regularly, had failed to keep the department or her attorney aware of her whereabouts and, as of the date of the petition, had not established adequate housing or employment. Most importantly, the court concluded, partly on the basis of that testimony, that she had not completed any of the substance abuse treatment programs in which she was enrolled by the department, the most essential of the specific steps assigned to her by the court. In fact, she expressed to Verene-Penix her unwillingness to enter into any further programs, insisting that she could refrain from drug use through her own devices. The court acted within its authority in considering the respondent's failure to abide by the specific steps to which she had agreed to facilitate the return to her of Ashley. See *In re Luis C.*, 210 Conn. 157, 167–68, 554 A.2d 722 (1989).

The court's reliance on expert testimony offered by Robert D. Meier, the court-appointed psychologist, also

was proper. See *In re Tabitha P.*, 39 Conn. App. 353, 364–65 n.8, 664 A.2d 1168 (1995); *In re Christina V.*, 38 Conn. App. 214, 221, 660 A.2d 863 (1995). Meier observed the interaction between the respondent and Ashley during their visits together. He noted that the respondent would frequently mention to Ashley the prospect of returning home, and that the respondent "was more concerned about her own agenda than the conflict and confusion caused for her daughter by the statements about coming home." Meier also observed the interaction between Ashley and her foster mother. He perceived a strong bond between the two and considered the foster mother to be a very caring foster mother with good judgment. He concluded that the respondent's "prognosis for long-term recovery is poor, given her attitude toward treatment, her lack of insight, her poor judgment and her pattern of failure."

The respondent testified that she had made some progress toward rehabilitation. She testified that she had moved into a new apartment, had been caring for another child, her newborn son, and had not used illegal substances since December, 2001. Nonetheless, the court was within its discretion to balance that testimony against the evidence presented by the commissioner, namely, the testimony of Meier and the three social workers. Despite the respondent's testimony, the court had ample evidence to support its finding that any strides toward rehabilitation made by the respondent were not achieved within a reasonable time, nor were they sufficient with respect to Ashley's needs.

Our review of the record reveals that the evidence presented to the court reasonably could lead it to conclude that the respondent had not achieved sufficient rehabilitation such that she could assume the role of a responsible parent for Ashley in a reasonable time. Although the respondent may have achieved a level of stability within her limitations, we cannot conclude that

the court's finding that she had failed to achieve sufficient rehabilitation was clearly erroneous because it was supported by clear and convincing evidence.

## II

The respondent's final claim is that the court abused its discretion by not considering facts subsequent to the filing of the petition. She contends that those facts tend to show that she could assume, within a reasonable time, a responsible position in Ashley's life. She contends that this evidence demonstrates that the problems that led to Ashley's removal have been and continue to be addressed and that she is capable of being a responsible parent. The respondent also argues that in light of that evidence, the court, sua sponte, should have ordered further random drug testing when the commissioner failed to do so. We disagree.

The following additional facts are necessary for our resolution of the respondent's claim. The commissioner filed the petition at issue in this appeal on December 14, 2001. The respondent entered into a treatment program between late December, 2001, and early January, 2002, but discharged herself without completing the program. The respondent expressed to Verene-Penix that she could remain free of substances without assistance and testified that she had refrained from drug use since December 8, 2001. In late February or early March, 2002, she moved into a two bedroom apartment in Hartford, away from her prior residence at her mother's home, which she admitted was a "trigger" for her drug use.

On May 29, 2002, the respondent submitted to a hair test at the request of the commissioner. The result of the test was negative. Subsequent hair tests scheduled by the commissioner could not be completed due to the short length of the respondent's hair. The respondent testified that she had submitted to additional drug test-

ing but offered no documentation of that testing. Later urine tests, the dates for which were chosen by the respondent, were negative. In addition, there were no indications of substance abuse at the time she gave birth to her son on August 15, 2002, and no referrals were made to the commissioner by the hospital.

Our role on appeal is not to retry the case but to view the evidence in the light most favorable to sustaining the judgment. See *In re Jennifer W.*, supra, 75 Conn. App. 499. Moreover, it is the province of the trial court to evaluate the evidence and the credibility of witnesses. See *State* v. *Riser*, 70 Conn. App. 543, 555, 800 A.2d 564 (2002). The record reveals that the respondent was permitted to present evidence tending to show that she had achieved rehabilitation after the filing of the petition for the termination of her parental rights. In fact, contrary to the respondent's position, the court included factual findings regarding that evidence in its memorandum of decision. The court stated that "there is no evidence of conduct prior *or subsequent* to the date of the filing of the petition which would encourage the belief that within a reasonable period of time, considering the age and needs of her daughter, she could assume a responsible position in her life." (Emphasis added.)

In any event, the commissioner is correct in stating that the decision whether to consider that evidence rested soundly within the court's discretion. Trial courts have "discretion concerning whether to consider events and behavior that occurred after the filing of the petition [to terminate parental rights] to determine if the respondent had failed to achieve sufficient personal rehabilitation to allow her to assume a responsible position in her [child's life]." *In re Jennifer W.*, supra, 75 Conn. App. 495. We conclude, therefore, that the respondent's claim is without merit.

The respondent further claims that the court independently should have ordered further random drug testing when the commissioner failed to do so. She contends that the court should have ordered further drug testing in light of her testimony that she had not used illegal substances since December, 2001, and the lack of any positive drug tests since May, 2002. She contends that further testing would have guided the court to make the appropriate decision. We disagree.

In response, the commissioner argues that the respondent is asking this court to reweigh the evidence and "to give more weight to her statement of sobriety together with the absence of positive toxicology screens against the overwhelming evidence of failed programs, transience, lack of contact, poor judgment and failure to identify and meet the emotional needs of Ashley." The commissioner urges that such a task is not within the scope of appellate review and that we must view the evidence in the light most favorable to sustaining the judgment. We agree with the commissioner.

We already have determined that the court's decision to terminate the respondent's parental rights was supported by clear and convincing evidence and, thus, was not clearly erroneous. The court was within its discretion to weigh the respondent's testimony and negative drug screenings against the evidence presented by the commissioner.[5] In balancing the evidence, the court concluded that the termination of the respondent's

---

[5] The respondent did not appear for several urine screens scheduled by the department in January and February, 2001. The respondent tested positive for cocaine on two occasions in both January and March, 2001. Notwithstanding that evidence, the respondent emphasizes that she tested negative for substances in a May 29, 2002 hair test scheduled by the department. The respondent testified that she had not used illegal substances since December, 2001.

It should also be noted that Verene-Penix scheduled a total of three hair tests for the respondent in May and June, 2002. The first two tests were not performed due to the length of the respondent's hair.

parental rights was in Ashley's best interest. Accordingly, we cannot say that it was improper for the court not to independently order further drug testing when it already had been presented with ample evidence to support its judgment.

The judgment is affirmed.

In this opinion the other judges concurred.