******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE SHANE M.*
(AC 35819)

Alvord, Bear and Pellegrino, Js.

*Argued November 14, 2013—officially released February 3, 2014***

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Burgdorff, J.)

*Jon L. Schoenhorn*, with whom was *Irene J. Kim*,
for the appellant (respondent father).

*Carolyn Signorelli*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney gen-
eral, and *Benjamin Zivyon*, assistant attorney general,
for the appellee (petitioner).

*Robert J. Moore*, for the minor child.

*Opinion*

PELLEGRINO, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Shane M.[1] On appeal, the respondent argues the court improperly (1) terminated his parental rights pursuant to General Statutes § 17a-112 (j) based on an overly broad interpretation of the statute; (2) terminated his parental rights based on insufficient evidence; (3) drew an adverse inference against the respondent without prior notice; and (4) terminated his parental rights because § 17a-112 (j) (3) (B) is unconstitutionally vague as applied to him. We conclude that the court did not err in granting the petition to terminate the respondent's parental rights, and affirm the judgment.

After a trial, at which the respondent was represented by counsel, the court in its well reasoned and comprehensive memorandum of decision detailed the following findings of fact and procedural history. The respondent is the biological father of Shane M., who was born on May 1, 2010. The petitioner, the Commissioner of Children and Families (commissioner), initially became involved with Shane shortly after he was born. The commissioner filed a petition of neglect on August 23, 2010, based in part on a domestic incident between Shane's mother and the respondent. The court granted the commissioner temporary custody of Shane on November 24, 2010, and the court issued initial specific steps to facilitate reunification on that date. On March 15, 2011, the respondent entered a plea of nolo contendere to the petition of neglect, and the court ordered final specific steps to facilitate the reunification of the respondent and Shane.[2]

The respondent's final specific steps included: (1) cooperate and keep appointments with the Department of Children and Families (department); (2) undergo individual counseling with the goal of addressing issues of depression and anger management; (3) undergo parenting counseling with the goals of learning appropriate child development and becoming a safe and nurturing parent; (4) cooperate with counseling recommendations regarding assessment and treatment; (5) submit to substance abuse evaluations, treatment, and random drug testing, with the time and method of testing at the discretion of the department; (6) refrain from drug and alcohol use; (7) avoid involvement with the criminal justice system; and (8) cooperate with court-ordered evaluations and testing. The commissioner filed a petition to terminate the respondent's parental rights on November 23, 2011.

The court considered the petition to terminate parental rights pursuant to § 17a-112 (j), noting the relevant issues were: (1) whether the department made reasonable efforts to reunite Shane and the respondent, or

whether the respondent was unable or unwilling to benefit from reunification efforts; (2) whether the respondent, after being provided with specific steps, "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time . . . such parent could assume a responsible position in the life of [Shane]";[3] and (3) whether termination of parental rights was in the best interests of Shane. After the court concluded that the department had made reasonable efforts to reunite Shane and the respondent,[4] it considered whether the respondent, in light of the specific steps, achieved a sufficient degree of personal rehabilitation such that he could function as a responsible parent. The court detailed the following evidence.

The respondent underwent a clinical assessment at Radiance Innovative Services (Radiance).[5] A Radiance therapist later recommended that the respondent pursue long term therapy and participate in a medication evaluation to determine if he needed to be treated with medication. The respondent, however, did not follow these recommendations, and missed multiple appointments with Radiance. The respondent indicated that he did not need these services because they were unnecessary. In March, 2012, Radiance reported that the respondent was "less focused" during individual counseling and that his counselor was concerned about the respondent's ability to parent in light of his anxiety. The respondent also completed a parenting program through Radiance and engaged in supervised visitation with Shane. A provider recommended a parenting mentor to help the respondent further develop his parenting skills. The respondent refused the additional assistance, claiming he did not need the mentor because he was fully capable of raising Shane.

The respondent attended individual counseling at Community Health Resources. The court found, however, that the respondent did not engage in counseling and was not fully committed to working on his individual issues. The respondent stated to his provider at Community Health Resources that he was only attending counseling to appease the department. On December 27, 2012, the program recommended no further treatment, despite the fact that the respondent continued to refuse to participate in medication evaluations.

The department also referred the respondent to the Non-Violence Alliance Program for domestic violence counseling. At this program, the respondent stated he did not need domestic violence counseling, as he was the victim. A different domestic violence program that the respondent attended reported that he tended to blame others for his problems.

In order to address concerns that the respondent had a substance abuse problem, the specific steps issued

by the court included a prohibition on the use of drugs and alcohol, and directed the respondent to submit to random drug testing at the discretion of the department. After the final specific steps were issued, however, the respondent tested positive for marijuana use on four separate occasions.[6] As a result, the respondent was referred to another provider for a substance abuse evaluation. He missed four appointments with this provider, and was discharged from the substance abuse treatment program. The respondent requested that he be referred to another program. At this second substance abuse program, the respondent failed an initial hair follicle drug test and refused to participate in group therapy. The respondent continued to refuse to submit to a hair follicle drug test after December, 2012, despite department requests that he do so.

As part of its determination regarding the respondent's degree of rehabilitation pursuant to § 17a-112 (j) (B), the court also relied upon the testimony of Derek Franklin, a clinical psychologist, whom the court found highly credible. Franklin recommended treatment for the respondent's psychological issues, as well as his substance abuse. Franklin emphasized the need to identify medication that could be helpful in managing the respondent's diagnoses. He specifically voiced his concerns over the respondent's failure to engage in substance abuse treatment, his reluctance to sufficiently address his ongoing anger issues, and his refusal to undergo a medication evaluation.

After considering the evidence, the court found that the respondent's level of rehabilitation "falls far short of that which would reasonably encourage the belief that at some future date [he] could assume a safe, reliable and responsible position in Shane's life given his age and needs." Although the court recognized that the respondent complied with some steps, it ultimately found the respondent "fail[ed] to adequately address [his] substance abuse, mental health and domestic violence issues."[7] The court found the respondent had not improved his ability to parent Shane.

The court, in its decision, noted that the respondent failed to acknowledge his personal issues that negatively affected his ability to parent. Specifically, the court highlighted the respondent's repeated assertions that he did not need any assistance with his parenting, substance abuse, or mental health issues, and his statement that he was engaging in services only to appease the department. The court stated it was "[m]ost concerning and troubling" that the respondent asserted that he no longer used marijuana, because this assertion was contradicted by the multiple failed drug tests and the respondent's refusal to take a hair follicle test. The court inferred that the refusal to take any additional drug tests was due to the fact that the respondent was still abusing illegal substances.[8]

The respondent's refusal to accept the services of a parenting mentor, refusal to participate in a medication evaluation, as well as his claims that he did not need assistance or abuse drugs, "clearly demonstrate[d] to the court that [the respondent] has not gained sufficient insight or acknowledgement of his ongoing issues and is, therefore, unable to put his son's interests before his own. . . . [The respondent's] continual refusal to cooperate with . . . court ordered recommendations when doing so would aid in his effort to be reunited with his son, is deeply troubling." The court then found that the department had proven, by clear and convincing evidence, that the respondent has not exhibited the requisite degree of personal rehabilitation to warrant reunification and, after considering the best interests of the child, the court terminated the respondent's parental rights with respect to Shane. The respondent filed a timely appeal.

I

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence." (Internal quotation marks omitted.) *In re Janazia S.*, 112 Conn. App. 69, 81–82, 961 A.2d 1036 (2009). Section 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that . . . (3) . . . (B) the child . . . has been found . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and [the parent] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable amount of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." "If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Janazia S.*, supra, 82.

A

The respondent argues that the court misinterpreted the term "rehabilitation" in § 17a-112 (j) (3) (B), and that this improper interpretation led the court to consider evidence that "[does] not apply as a matter of law." The specific evidence at issue is (1) the court's finding that the respondent repeatedly asserted he did not need assistance and his statement that he was engaging in the recommended programs only to "appease" the

department; (2) the respondent's refusal to work with a parenting mentor; (3) the respondent's refusal to undergo a medication evaluation; and (4) the inference that the respondent continued to abuse marijuana because he refused to take a drug test.

The respondent claims that the court's interpretation of the term rehabilitation in § 17a-112 (j) (3) (B) was unreasonably broad, and therefore the previously enumerated evidence was considered improperly. The respondent does not specifically explain how the court misinterpreted the term "rehabilitation," does not engage in a traditional exercise of statutory interpretation, and does not offer his own reasonable interpretation of that term. He claims it was improper for the court to rely on the four pieces of evidence which "were not grounds alleged in the petition [for the termination of parental rights] and were not argued by [the commissioner] at the conclusion of evidence." Moreover, the respondent relies on our Supreme Court's recent decision in *In re Elvin G.*, 310 Conn. 485, 78 A.3d 797 (2013), to argue that rehabilitation, as contemplated in § 17a-112 (j) (3) (B), "must relate directly to specific steps." We interpret the respondent's argument as claiming that the court erred because it misinterpreted the term "rehabilitation" as including considerations not provided for in the specific steps.[9]

The respondent raises a question of statutory interpretation, over which we exercise plenary review. *In re Elvin G.*, supra, 310 Conn. 499. We are guided by our previous interpretation of the term rehabilitation in § 17a-112 (j) (3) (B). "Rehabilitate means to restore . . . to a useful and constructive place in society through social rehabilitation. . . . Likewise, [f]ailure to rehabilitate is defined as the failure of a parent to achieve expectations following the adjudication and disposition of the prior neglect [proceeding]." (Internal quotation marks omitted.) *In re Jazmine B.*, 121 Conn. App. 376, 391, 996 A.2d 286, cert. denied, 297 Conn. 924, 998 A.2d 168 (2010). Furthermore, in determining whether a party has achieved these expectations, and therefore has been rehabilitated, "a court may consider whether the parent has corrected the factors that led to the initial commitment *regardless of whether those factors were included in the specific expectations ordered by the court or imposed by the department*." (Emphasis in original; internal quotation marks omitted.) *In re Emerald C.*, 108 Conn. App. 839, 847, 949 A.2d 1266, cert. denied, 289 Conn. 923, 958 A.2d 150 (2008). This leads to the conclusion that the term rehabilitation in § 17a-112 (j) (3) (B) is not limited to the conduct contemplated in the specific steps. The court therefore did not err in considering evidence that is not explicitly detailed in the specific steps.

We also note that the respondent's reliance on *In re Elvin G.* is misplaced. The issue in that case was

"whether a prior order of specific steps to aid in reunification is a necessary prerequisite for any termination of parental rights that is based solely on a parent's failure to rehabilitate." *In re Elvin G.*, supra, 310 Conn. 487. Our Supreme Court concluded that parents must be provided with specific steps whenever parental rights are terminated pursuant to either § 17a-112 (j) (3) (B) (i) or (ii). Id., 506. The respondent does not contest that he was provided with specific steps in the present action, but argues that *In re Elvin G.* stands for the proposition that the termination of parental rights must be based on grounds contained in the specific steps. On the contrary, in *In re Elvin G.*, supra, 508, our Supreme Court reaffirmed the longstanding principle, as articulated in *In re Melody L.*, 290 Conn. 131, 150–51, 962 A.2d 81 (2009), that a finding of failure to achieve personal rehabilitation can be based on conduct unrelated to the specific steps issued. As a result, the court did not improperly interpret the term rehabilitation by considering evidence that allegedly was not encompassed by the specific steps.

B

Next, the respondent claims that the evidence presented was insufficient to provide a basis to terminate his parental rights. He argues that because he did not have an initial opportunity to parent Shane, his ability to parent cannot be rehabilitated or restored as required by § 17a-112 (j) (3) (B). Furthermore, he claims that without an initial opportunity to parent Shane, the evidence presented at trial was insufficient to prove he failed to achieve rehabilitation because the evidence set forth in part I A of this opinion was not included in the specific steps and therefore did not relate to the respondent's rehabilitation. We reject that argument and conclude that the evidence presented at trial was sufficient for the court to find that the respondent did not achieve a sufficient degree of personal rehabilitation.

We begin by addressing the respondent's arguments that the court's decision was improper because the respondent never had an initial opportunity to parent Shane, and because the evidence upon which the court relied does not relate to the specific steps. While the term "rehabilitate" as used in § 17a-112 (j) (B) (3) has been defined as "to restore" the respondent's ability to act as a responsible parent, we have also explained that the standard for rehabilitation is set by the "expectations following the adjudication and disposition of the prior neglect [proceeding]." (Internal quotation marks omitted.) *In re Jazmine B.*, supra, 121 Conn. App. 391. In other words, whether a parent has rehabilitated under the statute depends on whether he has met the expectations giving rise to the specific steps. This standard does not depend on whether a parent has had a previous opportunity to parent, as the respondent

argues. We therefore conclude that the evidence presented was not insufficient merely because the respondent allegedly did not have a previous opportunity to parent Shane.

The respondent's claim that the court improperly terminated his parental rights based on insufficient evidence because the evidence set forth in part I A of this opinion was not contemplated by the specific steps has no merit. We have explained that "[t]he specific steps facilitate, but do not guarantee, the return of the child to the parent. . . . Although a parent may have participated in the programs recommended pursuant to the specific steps ordered, a court may properly find that the parent has failed to achieve rehabilitation. . . . In other words, a finding of rehabilitation is not based on a mechanistic tabulation of whether a parent has undertaken specific steps ordered." (Citations omitted; emphasis omitted.) *In re Destiny R.*, 134 Conn. App. 625, 627, 39 A.3d 727, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). "In determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 150–51; see also *In re Emerald C.*, supra, 108 Conn. App. 847. The respondent's argument that the court's decision was improper because the evidence does not relate to the specific steps therefore has no basis in our case law.

C

Finally, we address the merits of the respondent's insufficiency of the evidence claim. "[W]e review a trial court's finding that a parent has failed to achieve sufficient rehabilitation only for clear error." *In re Elvin G.*, supra, 310 Conn. 499. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo." (Internal quotation marks omitted.) *In re Janazia S.*, supra, 112 Conn. App. 81. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [E]very reasonable presumption is made in favor of the trial court's ruling. . . . We also recognize that the trial court has an ability superior to our own to evaluate the evidence because of its firsthand opportunity to observe the parties and to hear their testimony." (Internal quotation marks omitted.) *In re Ashley M.*, 82 Conn. App. 66, 71, 842 A.2d 624 (2004).

In order for a court to terminate parental rights for a

parent's failure to achieve personal rehabilitation, § 17a-112 (j) (B) (3) "requires the court to find, by clear and convincing evidence, that the level of rehabilitation [the respondent] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [the respondent] can assume a responsible position in [the] child's life." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 149. Failure to complete the specific steps is evidence that the respondent has not achieved a sufficient degree of rehabilitation. *In re Ashley M.*, supra, 82 Conn. App. 72. Moreover, a respondent's failure to acknowledge the underlying personal issues that form the basis for the department's concerns indicates a failure to achieve a sufficient degree of personal rehabilitation. See *In re Kamora W.*, 132 Conn. App. 179, 190, 31 A.3d 398 (2011) (respondent refused to acknowledge drug or alcohol problem); *In re Jocquyce C.*, 124 Conn. App. 619, 626–27, 5 A.3d 575 (2010) (respondent failed to acknowledge habitual involvement with domestic violence); *In re Christopher B.*, 117 Conn. App. 773, 784, 980 A.2d 961 (2012) (respondent blamed others for problems); *In re Jermaine S.*, 86 Conn. App. 819, 834, 863 A.2d 720 (respondent's inability to admit she had substance abuse problem "thwarted her ability to achieve rehabilitation"), cert. denied, 273 Conn. 938, 875 A.2d 43 (2005); *In re Shiela J.*, 62 Conn. App. 470, 481, 771 A.2d 244 (2001) (respondent failed to recognize her need for recommended counseling).

The court's finding that the evidence was sufficient to terminate the respondent's parental rights was not clearly erroneous. The court's decision was based on the fact that the respondent failed to "adequately address [his] substance abuse, mental health, and domestic violence issues . . . ." There is extensive support in the record for this finding. For example, the commissioner presented evidence that the respondent did not comply with the specific steps. The specific steps, inter alia, directed the respondent to cooperate with counseling recommendations, refrain from drug and alcohol use, submit to substance abuse evaluations, participate in treatment, and undergo random drug testing at the department's discretion. The respondent's continued use of marijuana and his refusal to undergo both drug testing and the recommended medication assessment violated these specific steps.[10] There is also evidence in the record, including the testimony of Franklin, which demonstrated that the respondent failed to acknowledge the personal issues that hindered his ability to parent. A domestic violence program counselor found the respondent tended to blame others for his problems. The respondent himself stated he did not need the recommended services, and that he was only participating to appease the department. Based on the evidence that the respondent violated the specific steps and would not acknowledge his underlying personal

issues that led to the order of temporary custody and subsequent neglect adjudication, it was not clearly erroneous for the court to conclude that the respondent had not achieved the level of rehabilitation that would encourage the belief that in a reasonable amount of time he could assume the role of a responsible parent. See *In re Christopher B.*, supra, 117 Conn. App. 784; *In re Jermaine S.*, supra, 86 Conn. App. 834; *In re Ashley M.*, supra, 82 Conn. App. 72.[11]

## II

The respondent also claims that it was improper for the court to infer that he continued to use drugs because he refused to submit to a hair follicle drug test. This claim is based on Practice Book §§ 32a-1 (h)[12] and 35a-7A,[13] as well as General Statutes § 46b-137 (d).[14] The respondent concedes that he did not object to this adverse inference at trial, nor did he file any motions related to this inference after the court issued its memorandum of decision. As a result, the respondent seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We conclude that the respondent has not demonstrated that his claim is of a constitutional magnitude, and therefore it cannot be reviewed.

"Under *Golding*, a [respondent] can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the claim of error; (2) the claim is of constitutional magnitude alleging deprivation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *In re Azareon Y.*, 309 Conn. 626, 634, 72 A.3d 1074 (2013). The respondent "must meet all four prongs of the *Golding* analysis to be successful. . . . We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 579, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000). "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *In re Azareon Y.*, supra, 634–35. If either of the first two prongs is not met, the claim cannot be reviewed. *State* v. *Bridget M.*, 124 Conn. App. 361, 367, 4 A.3d 1245 (2010).

"The fact that [a respondent] has argued [that a] claim is one of constitutional magnitude does not, alone, satisfy the requirements of *Golding*." (Internal quotation marks omitted.) *In re Giovanni C.*, 120 Conn. App. 277, 281, 991 A.2d 638 (2010). We previously have reasoned that "not every deviation from the specific requirements

of the rules of practice presents an issue of constitutional magnitude." *State* v. *Bangulescu*, 80 Conn. App. 26, 36, 832 A.2d 1187, cert. denied, 276 Conn. 907, 840 A.2d 1171 (2003). An alleged violation of the rules of practice, without a discussion of how that violation also infringes on a constitutional right, is insufficient to satisfy the second prong of *Golding*. *State* v. *Bridget M.*, supra, 124 Conn. App. 367–68. "Thus, we will discuss any violation of the rules of practice only insofar as it is relevant to [a] constitutional claim; any unpreserved claim alleging a violation of the rules of practice has no independent significance for purposes of [*Golding*] review." (Internal quotation marks omitted.) *State* v. *Bangulescu*, supra, 36.

We conclude that the respondent has not demonstrated that his claim is of a constitutional magnitude. The respondent's claim is based on alleged violations of Practice Book §§ 32a-1 (h), 35a-7A, and General Statutes § 46b-137. In order for this claim to be reviewable under *Golding*, the respondent was required to explain how a violation of either the statute or rules of practice deprived him of a constitutionally protected right. See *State* v. *Bridget M.*, supra, 124 Conn. App. 367–68. This explanation was not provided.

The respondent asserts that his claim "is grounded on fundamental fairness" and the "fundamental notions of fair play and notice," citing the general principle that "termination of parental rights implicates a parent's fundamental interest." Although we acknowledge that a fundamental constitutional right is at stake in a proceeding to terminate parental rights; *In re Elvin G.*, supra, 310 Conn. 500–501; the respondent does not explain how a violation of Practice Book §§ 32a-1 (h), 35A-7, or General Statutes § 46b-137 specifically infringes on that constitutional right. The respondent's argument does not explain, for example, how a court's failure to comply with Practice Book §§ 32a-1 or 35A-7 alone also violates his fifth amendment rights, or deprives him of his parental rights.[15] General assertions are insufficient to invoke *Golding*; we require that the respondent "present an analysis based in law and tailored to the unique circumstances surrounding the claim that . . . [indicates] the claim is of constitutional magnitude, alleging the deprivation of a fundamental constitutional right." *State* v. *Elson*, 125 Conn. App. 328, 354, 9 A.3d 731 (2010) (en banc), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011). The respondent does not meet his burden under the second prong of *Golding*, and therefore this claim is not reviewable.

### III

The respondent also contends that § 17a-112 (j) is unconstitutionally vague as applied to him. He again concedes this claim was not raised at trial and relies on a *Golding* review.[16] Accordingly, we follow the *Golding* framework and guiding principles as detailed in part II

of this opinion. Although we determine this claim is reviewable, the respondent is not entitled to relief because he has not demonstrated that the alleged constitutional violation clearly exists.

"The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution."[17] (Internal quotation marks omitted.) *In re Jazmine B.*, supra, 121 Conn. App. 389. "The doctrine [of vagueness] requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement." (Internal quotation marks omitted.) *In re Michael L.*, 56 Conn. App. 688, 695–96, 745 A.2d 847 (2000). "[T]he minimum guidelines prong is applicable only where a statute is being challenged as unconstitutional on its face . . . ." (Internal quotation marks omitted.) *In re Jazmine B.*, supra, 389.

"Legislative enactments carry with them a strong presumption of constitutionality, and a party challenging the constitutionality of a validly enacted statute bears the weighty burden of proving unconstitutionality beyond a reasonable doubt. . . . A statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions, nor is it necessary that a statute list the exact conduct prohibited. . . . The constitution requires no more than a reasonable degree of certainty." (Citation omitted; internal quotation marks omitted.) Id., 390. "[B]ecause we assume that a man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (Internal quotation marks omitted.) *In re Michael L.*, supra, 56 Conn. App. 696. "[A] statute gives fair warning of what conduct it prohibits if it is reasonably specific and direct enough so that a person of ordinary intelligence has a reasonable opportunity to govern his or her behavior by reference to the words of the statute together with available judicial gloss." (Internal quotation marks omitted.) Id., 697.

Section 17a-112 (j) (3) (B) allows for the termination of parental rights due to a respondent's failure to achieve personal rehabilitation only after the respondent has been issued specific steps to facilitate rehabilitation. "Specific steps provide notice . . . to a parent as to what should be done to facilitate reunification and prevent termination of rights." *In re Elvin G.*, supra, 310 Conn. 507–508; see also *In re Kamora W.*, supra, 132 Conn. App. 188 (specific steps put respondent "on notice"). The specific steps are a " 'benchmark' " by which the court will measure the respondent's conduct to determine whether termination is appropriate pursuant to § 17a-112 (j) (3) (B). *In re Stephen M.*, 109 Conn.

App. 644, 661, 953 A.2d 668 (2008). We acknowledge that the court need not base its determination purely on the respondent's compliance with the specific steps. *In re Destiny R.*, supra, 134 Conn. App. 627. It is well established judicial gloss, however, that "a court may consider whether a parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 150–51.

On March 15, 2011, after the respondent entered a plea of nolo contendere to the neglect petition, the court read the specific steps to the respondent. The respondent acknowledged that he needed to comply with the steps in order to be reunited with Shane, and that if he failed to comply with any step it could be a basis for terminating his parental rights. As noted previously in this opinion, the respondent failed to comply with the specific steps. Specifically, he did not cooperate with counseling recommendations regarding assessment and treatment, refused a random drug test, and continued to use marijuana, as evidenced by several failed drug tests. The specific steps issued to the respondent provided him with notice of what was required to achieve such degree of personal rehabilitation as required by § 17a-112 (j) (3) (B), and the respondent had a reasonable opportunity to comply. We conclude a person of reasonable intelligence would have known that refusing treatment recommendations, declining drug tests, and continuing to use marijuana would be a basis for terminating his parental rights under the circumstances. Section 17a-112 (j) (3) (B) therefore was not unconstitutionally vague as applied to the respondent. Accordingly, the court did not err in terminating the respondent's parental rights.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 3, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the respondent mother, who has not appealed from that judgment. We refer to the respondent father as the respondent in this opinion.

[2] Shane was adjudicated neglected and committed to the care of the commissioner on April 28, 2011, after Shane's mother also pleaded nolo contendere to the petition of neglect.

[3] Section 17a-112 (j) (3) (B) (ii) also requires a finding that Shane had been adjudicated neglected. The respondent did not appeal from the judgment of neglect rendered after he pleaded nolo contendere.

[4] In the alternative, the court found the respondent was unable to benefit from the reunification efforts.

[5] The court's memorandum of decision refers to both Radiance Innovative Services and Radiance Innovative Therapy. We refer to these two entities, collectively, as Radiance.

[6] The final specific steps were issued on March 15, 2011. The respondent

tested positive for marijuana on August 8, 2011, September 2, 2011, September 9, 2011, and September 16, 2011. He then tested positive for marijuana in a hair follicle drug test administered on June 13, 2012. The respondent has refused to submit to any additional hair follicle drug tests since December, 2012.

[7] The court noted that the respondent's therapist at Radiance was concerned that the respondent had not benefitted from the psychiatric or domestic violence services provided. This opinion was based on an incident in November, 2011, at the home of respondent's grandfather. During this incident, the respondent became upset, then poured gasoline on the floor of the home and threatened to light it on fire. The respondent was arrested for and convicted of disorderly conduct and given a suspended sentence. This incident caused concern for the therapist at Radiance because it indicated that the respondent had not benefitted from the services provided, as this incident occurred after the respondent had undergone five months of treatment at Radiance and completed two parenting programs.

[8] The department reported that the respondent did not want to participate in a hair follicle test because he did not want to cut his hair. In response, the department offered to take a body hair sample instead. The respondent again refused to take the test.

[9] The commissioner characterizes the respondent's claim as being that the evidence was not relevant to § 17a-112 (j). The respondent, however, concedes that the evidence at issue is relevant to a termination of parental rights petition.

[10] The respondent also argues that his marijuana use does not demonstrate a lack of rehabilitation because possession of less than one half of an ounce of marijuana is no longer a crime in Connecticut; instead, it is only a violation. See *State* v. *Menditto*, 147 Conn. App. 232, 236, 80 A.3d 923 (2013), cert. granted, Conn. , A.3d (2014). Aside from the fact that there is no evidence in the record regarding what amount of marijuana the respondent usually used, this argument is legally unpersuasive. Specific steps are not categorical prohibitions on illegal activities; they are used to encourage behavior that can enhance one's ability to parent, as illustrated by the fact that the specific steps directed the respondent to refrain from alcohol consumption, something he can legally do. See *In re Elvin G.*, supra, 310 Conn. 507–508 (specific steps provide guidance to facilitate reunification). Furthermore, *State* v. *Jimenez-Jaramill*, 134 Conn. App. 346, 367–69, 38 A.3d 239, cert. denied, 305 Conn. 913, 45 A.3d 100 (2012), cited by the respondent in support of his argument, relates to the applicability of the federal constitution's double jeopardy clause, and does not support the proposition that violations—as opposed to crimes—are not indicative of an inability to parent.

[11] The respondent contends that the evidence supporting the court's conclusion that he failed to achieve rehabilitation also was insufficient to conclude that termination of parental rights was in Shane's best interests and the least restrictive possible permanency plan. A court's determination regarding the best interests of a child is subject to the clearly erroneous standard of review. *In re Melody L.*, supra, 290 Conn. 163. The court based its decision on the same evidence that demonstrated the respondent failed to achieve rehabilitation, and found that the respondent is "in no better position today to provide for Shane than [he was] as the time of the removal in November, 2010. The problems that led to the removal have not been rectified . . . . Shane cannot wait indefinitely for the resolution of these issues. . . . Shane's best interests will not be served by reunifying [him] with [the respondent]." As detailed previously in this opinion, we concluded that these findings were supported by the record for purposes of determining whether the respondent achieved a sufficient degree of rehabilitation. The court's decision regarding Shane's best interests, which was based in part on the same findings, similarly is not clearly erroneous.

[12] Practice Book § 32a-1 (h) provides in relevant part: "Any confession, admission or statement, written or oral, made by the parent . . . of the child or youth after the filing of a petition alleging such child or youth to be neglected . . . shall be inadmissible in any proceeding held upon such petition against the person making such admission or statement unless such person shall have been advised . . . that any statements such person makes may be introduced in evidence against such person."

[13] Practice Book § 35a-7A provides: "If a party requests that the judicial authority draw an adverse inference from the parent's or guardian's failure to testify or the judicial authority intends to draw an adverse inference, either at the start of any trial or after the close of the petitioner's case-in-

chief, the judicial authority shall notify the parents or guardian that an adverse inference may be drawn from their failure to testify."

[14] The language of General Statutes § 46b-137 (d) is substantially similar to that of Practice Book § 32a-1 (h), but includes one exception that is not relevant to this appeal.

[15] The respondent's reliance on *In re Samantha C.*, 268 Conn. 614, 658, 847 A.2d 833 (2004), is unavailing, as it does not demonstrate that the respondent's claim is of a constitutional magnitude. The decision in *In re Samantha C.* was not based on constitutional grounds. The court observed, in response to a claim that the court should rely on fifth amendment jurisprudence in interpreting certain rules of practice that, that: "[T]he respondent's claim . . . does not appropriately rest on the fifth amendment; instead, it rests on a rule of practice . . . . We cannot conclude . . . that a parent's right not to testify, which exists only by virtue of a rule or statute, and is not constitutionally required, would, simply because of that enactment, also carry with it a protection that is generally reserved for the fifth amendment. The fact remains that the respondents in the present case asserted a nonconstitutional privilege, in a proceeding that is 'essentially civil,' and is neither criminal nor quasicriminal." (Citations omitted; footnotes omitted.) Id., 663–64. The court simply applied then Practice Book (2001) § 34-1 (f) to the facts of that case: "We also note that our conclusion that the trial court was required to have given the respondents prior notice of its intent to draw an adverse inference [from their failure to testify] is not based on due process grounds . . . rather, our conclusion represents what we perceive to be the most plausible reading of the procedures required in . . . the Practice Book." (Citation omitted; footnote omitted.) Id., 671–72. In sum, *In re Samantha C.* does not support the proposition that the respondent's claim is of a constitutional magnitude.

[16] The respondent argues in the alternative that this claim is reviewable because it was allegedly raised at a posttrial status conference. There is no record of this conference, and therefore it cannot be a basis for appellate review. *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 318 n.6, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010).

[17] The respondent does not argue that the Connecticut constitution affords a greater degree of due process protection. "Because the [respondent] does not contend that [he] is entitled to any greater protection under the state constitution than under the federal constitution, we treat those provisions as embodying the same level of protection." *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 339 n.8, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999).