******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GENE NEWLAND *v.* COMMISSIONER
OF CORRECTION
(SC 19381)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

Argued October 7, 2015—officially released August 30, 2016

*Michael J. Proto*, assistant state's attorney, with whom, on the brief, was *Patricia M. Froehlich*, state's attorney, for the appellant (respondent).

*Stephen Lebedevitch*, with whom were *James J. Ruane* and, on the brief, *Grayson Colt Holmes* and *Stephanie M. O'Neil*, for the appellee (petitioner).

*Opinion*

ZARELLA, J. This certified appeal involves two related claims raised by the petitioner, Gene Newland, for the first time during postconviction proceedings, namely, whether the trial court conducted an inadequate canvass prior to finding that he waived his right to counsel under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, and whether the trial court erroneously concluded that the waiver was knowing, intelligent and voluntary. The respondent, the Commissioner of Correction, appeals from the judgment of the Appellate Court, which affirmed the judgment of the habeas court granting the petitioner a new trial on the ground that the Division of Public Defender Services (public defender's office) had erroneously determined that he was ineligible for the assistance of counsel. The respondent contends that the Appellate Court incorrectly concluded that the petitioner had raised a claim of public defender error in the habeas court and that the claim was not procedurally defaulted because the cause and prejudice necessary to excuse procedural default is presumed when the right to counsel has been violated. We agree with the respondent that the petitioner did not advance a claim of public defender error in the habeas court but, rather, claimed that the trial court had conducted an inadequate canvass and erroneously concluded that he knowingly, intelligently and voluntarily waived his right to counsel. We thus reverse the judgment of the Appellate Court and direct that court to remand the case to the habeas court to address these claims. We decline to consider whether the cause and prejudice necessary to excuse procedural default may be presumed in the context of the petitioner's claims of trial court error because the habeas court and the Appellate Court did not conclude that default was excused with respect to those claims, and, accordingly, the issue is not properly before this court.

I

FACTS AND PROCEDURAL HISTORY

The record reveals the following undisputed facts and procedural history. In 2007, the petitioner was charged with one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes (Rev. to 2003) § 53-21 (a) (2) in connection with an incident that occurred in 2003. At his arraignment in the judicial district of Windham in May, 2007, Assistant Public Defender Ernest Green, Jr., appeared on behalf of the petitioner for bond purposes only. The petitioner subsequently posted $1000 on a $10,000 bond with the partial help of a loan from a friend and was released from custody. At the next pretrial hearing in June, 2007, the petitioner appeared without counsel. The assistant

state's attorney (prosecutor) informed the court that the petitioner had applied for a public defender but had been deemed ineligible. In accordance with the recommendation of the public defender's office, as represented by the prosecutor, the trial court continued the case for six weeks to allow the petitioner to retain private counsel.

Between July, 2007, and December, 2008, the petitioner appeared as a self-represented party for at least twelve pretrial scheduling hearings. At more than one of these hearings, the petitioner informed the court that the public defender's office had deemed him ineligible for appointed counsel due to his ownership of property, the house that his "family" was living in,[1] but that he nonetheless was having difficulty securing an attorney because he could not afford to hire one. At one hearing, the petitioner indicated that he was in the process of trying to refinance his property to obtain the funds. The petitioner's case was repeatedly continued to allow him more time to secure counsel. No representative from the public defender's office ever appeared in court to address the denial of services.

At a hearing in October, 2008, the petitioner indicated that his situation had worsened because he had lost one of his jobs due to a lack of transportation and because his house was in foreclosure. He asked the court if someone could assist him in preparing his case. In response, the court stated: "I can't tell somebody to do that for you. You either qualify for the public defender services or you don't, and that's a determination made by them independent[ly] of the court." The court suggested that the petitioner reapply for a public defender if his financial situation worsened since he first applied.

At a December, 2008 hearing, the trial court informed the petitioner that it was scheduling the petitioner's case for a jury trial due to the fact that nearly two years had elapsed since his arrest. The court agreed not to put the case on the jury list until at least March, 2009, in order to allow the petitioner more time to retain counsel. The court warned the petitioner that trial would proceed regardless of whether he secured counsel at that time.

In April, 2009, the petitioner appeared as a self-represented party to commence jury selection. At the outset, the court stated that it assumed that the petitioner had had plenty of time by this point to retain counsel. In response, the petitioner indicated that his efforts had been unsuccessful because he could not afford the minimum payment that counsel demanded, he was facing foreclosure on his property, and he had twice been deemed ineligible for public defender services. He indicated that he had just learned that he might be able to "put some kind of attachment to the property for a lawyer, so it's [going to] hopefully aid me in getting

counsel because I [did not have] any idea that I could do that before . . . ." The following exchange then ensued:

"The Court: But you have been advised over the past two years on different occasions . . . of your right to have an attorney represent you?

"[The Petitioner]: Yes, I have.

"The Court: Okay. And implicit in that right is the right to a public defender if you couldn't afford private counsel, but you say you've tried twice, and you've been deemed not to be qualified.

"[The Petitioner]: Due to the fact I own property. As soon as you . . . state that you own property or have a mortgage on property, you're automatically disqualified for a public defender, they told me. So, because I have property in my name, I'm not qualified for a public defender.

"The Court: So implicit in what you're telling me is you're waiving your right to have counsel represent you.

"[The Petitioner]: At present, yes. Unfortunately, I have no other choice.

"The Court: All right. I'm going to ask you some questions to ensure that you know exactly what you're getting into."

In addition to addressing the petitioner with regard to matters required for a proper waiver of counsel under Practice Book § 44-3, the court inquired about the petitioner's circumstances. The petitioner informed the court that he was thirty-seven years old and had a tenth grade education. He also explained that he had limited income and no family members with means to assist him. He indicated that he was not familiar with the rules of criminal procedure but that he had been given the Code of Evidence and some basic advice by Assistant Public Defender Green, and hoped to become familiar with these rules and procedures before trial. In response to the question of whether he felt that he had the training, experience and skill to represent himself, he stated: "Honestly, no, I don't feel I possess that training. . . . But I'm at the point where I have no other choice." When the court asked the petitioner whether he thought he had been given a reasonable time in which to seek private counsel, he responded: "Yes, I have. I've done what I can with my means, unfortunately." An exchange then ensued about the petitioner's efforts to obtain counsel. The court noted that it had never had a defendant represent himself with charges as serious as those facing the petitioner but explained that justice demands that at some point the state have the right to try its case. At the conclusion of its canvass, the court stated: "I'm going to make a finding under the circumstances that the [petitioner] has waived his right to be represented by counsel. I'm disappointed

that the court is asked to make this finding, but I don't see any alternative." The trial court made no express finding regarding whether the petitioner had the financial means to hire counsel or whether he had intentionally engaged in dilatory conduct. See, e.g., *United States* v. *Bauer*, 956 F.2d 693, 695 (7th Cir.) ("the combination of ability to pay for counsel plus refusal to do so *does* waive the right to counsel" [emphasis in original]), cert. denied, 506 U.S. 882, 113 S. Ct. 234, 121 L. Ed. 2d 169 (1992); see also *Fischetti* v. *Johnson*, 384 F.3d 140, 145 (3d Cir. 2004) ("[a] defendant's right to counsel is not without limit and cannot be the justification for inordinate delay or manipulation of the appointment system"); *United States* v. *Mitchell*, 777 F.2d 248, 256 (5th Cir. 1985) ("The right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. It is a right and a proper tool of the defendant; it cannot be used merely as a manipulative monkey wrench." [Internal quotation marks omitted.]), cert. denied sub nom. *Prado* v. *United States*, 475 U.S. 1096, 106 S. Ct. 1493, 89 L. Ed. 2d 895 (1986), and cert. denied, 476 U.S. 1184, 106 S. Ct. 2921, 91 L. Ed. 2d 549 (1986). The court did not appoint standby counsel.

Following a jury trial, the defendant was found guilty of both the sexual assault and risk of injury counts. The trial court rendered judgment in accordance with the verdict and imposed a total effective sentence of ten years imprisonment followed by eight years of special parole, with conditions including registration as a sexual offender. The petitioner did not appeal from the judgment of conviction.

Thereafter, the petitioner, as a self-represented party, filed a petition for a writ of habeas corpus, alleging that he had wrongfully been denied counsel. The petitioner was referred to the public defender's office, which determined that the petitioner was indigent. Counsel filed an amended two count petition, claiming that the trial court had (1) inadequately canvassed the petitioner prior to finding that he had waived his right to counsel, and (2) incorrectly concluded that the petitioner knowingly, intelligently and voluntarily waived his right to counsel. The amended petition alleged, inter alia, that the claims were not procedurally defaulted because cause and prejudice is presumed when a petitioner's right to counsel has been violated.

The respondent thereafter filed a return asserting an affirmative defense of procedural default as to both counts, citing the petitioner's failure to raise these claims before the trial court and his failure to appeal from the judgment of conviction. The respondent then filed a motion for summary judgment on the basis of that defense, claiming that no presumption of cause and prejudice applies to claims of an inadequate waiver canvass. The habeas court denied the motion without

prejudice.

During the evidentiary hearing on the petition, the petitioner introduced the transcripts of the criminal proceedings without objection. When the petitioner sought to introduce evidence regarding his bank account balances between June, 2007, and April, 2009, his efforts to obtain counsel, and the procedures for determining eligibility for public defender services, the respondent objected. The respondent claimed that this evidence was irrelevant because the petitioner had not advanced a challenge to the determination of the public defender's office that he was not indigent. The petitioner replied that the evidence was relevant to the claims that he had raised in his petition. The habeas court overruled the objection without prejudice to being renewed in the posttrial briefs. Thereafter, the petitioner testified that he had a minimal or negative bank account balance during this period, which he supported with bank account statements, and that he was working a low wage job in April, 2009. He testified that he had made numerous, unsuccessful efforts to obtain private counsel after he had been denied a public defender, and that no one had informed him that he had the right to appeal from the eligibility decisions of the public defender's office. The petitioner acknowledged that he had approximately $50,000 in equity in his property, based on the property's appraised value when he refinanced it in January, 2007, and the outstanding mortgage on the property.[2] He offered evidence to establish that an action to foreclose the mortgage had been commenced in July, 2008.

The petitioner also proffered testimony from Ramon J. Canning, the Public Defender for the judicial district of Windham, where the petitioner filed his applications, and Brian S. Carlow, the Deputy Chief Public Defender in the Office of the Chief Public Defender. Neither had any knowledge of the petitioner's applications, which had been destroyed, and, therefore, they only offered testimony regarding application procedures and eligibility criteria generally. Although there was no dispute that, at the time of the waiver canvass in April, 2009, the petitioner would have met the income eligibility guidelines for public defender services on the basis of the income he reported to the trial court and the seriousness of the charges, there were some inconsistencies in Canning's and Carlow's testimony. Canning testified that equity in property could be a disqualifying factor, which would not be affected by a pending foreclosure because a property owner might still have considerable equity despite the pending foreclosure. By contrast, Carlow assumed that the equity in a property would not be readily accessible if the property was in foreclosure, barring unusual circumstances, and, therefore, property subject to foreclosure generally would not be a factor in assessing eligibility. Carlow further testified that, in the late 2000s, property ownership

would not have been given significant weight in disqualifying an income eligible applicant because he assumed that relatively few people would have been able to easily access any equity due to the state of the economy at that time. In addition, Carlow testified that the eligibility decision of the public defender's office is only a recommendation, with the trial court having ultimate authority to decide whether a defendant is eligible, whereas Canning indicated that the eligibility decision is final unless challenged.

The habeas court thereafter granted the petition, concluding that the petitioner's sixth amendment right to counsel had been violated. In support of its decision, the habeas court made the following findings. At the time of his trial, the petitioner was making between $300 and $350 per week. He had no available funds in any bank accounts. He owned a residential property that was subject to a mortgage in the amount of approximately $117,000 and that had a fair market value of $168,000 prior to his 2007 arrest. As of July, 2008, and during the petitioner's criminal trial, the petitioner's property was subject to a foreclosure action based on his default on the mortgage. The petitioner had easily met the income eligibility requirements set by the Public Defender Services Commission for a serious felony charge and, therefore, was presumed to be eligible for services. The public defender's office erred in denying the petitioner's application on the basis of his property ownership because the equity was limited and not readily accessible, and because the property was subject to an ongoing foreclosure action.

With respect to the respondent's affirmative defense, the habeas court concluded that a claim of public defender error was not procedurally defaulted. It relied on *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 532, 536, 39 A.3d 799 (2012), for the proposition that a denial of counsel establishes the cause and prejudice necessary to excuse default. The habeas court further reasoned that, because neither the public defender's office nor the trial court had informed the petitioner that he had a right to appeal from the denial of his applications for public defender services,[3] and because the petitioner had explained his financial situation to the trial court, he was not defaulted for failure to appeal from the denial of his applications to the trial court.

With respect to the merits of the petitioner's claim, the habeas court determined that "the correctness of the public defender's indigency determination goes directly to the petitioner's claim that he did not knowingly, intelligently and voluntarily waive his right to counsel and, thus, is properly before the court." Ultimately, the court concluded: "[T]he petitioner did not knowingly, intelligently and voluntarily waive his right to counsel because he mistakenly believed that he did

not qualify for the public defender's services and only acquiesced to representing himself because he could not afford or otherwise retain private counsel. Had the petitioner been properly informed of his right to the services of a public defender, he would have accepted those services. Thus, but for the public defender's erroneous eligibility determination, the petitioner would not have implicitly or otherwise waived his right to counsel, and the trial court would not have accepted the implicit waiver had it known of the petitioner's eligibility." (Internal quotation marks omitted.) The habeas court rendered judgment granting the habeas petition, vacated the petitioner's conviction, and ordered that he be granted a new trial.

The respondent appealed from the judgment of the habeas court to the Appellate Court. On appeal, the respondent claimed that (1) the habeas court improperly denied his motion for summary judgment because the cause and prejudice necessary to overcome procedural default is not presumed in a claim that the trial court's canvass and determination of waiver were improper, (2) the habeas court improperly granted the petition on the basis of a claim that had not been raised in the petition, and (3) even if properly considered, the petitioner had not met his burden of proving that he had been deprived of counsel due to an error by the public defender's office. See *Newland* v. *Commissioner of Correction*, 151 Conn. App. 134, 146 and n.1, 150, 152, 94 A.3d 676 (2014). The Appellate Court affirmed the judgment of the habeas court; id., 153; relying on reasoning largely consistent with that of the habeas court. See id., 146–53. The Appellate Court summarily rejected the respondent's contention that the petitioner's claim was procedurally defaulted by virtue of the petitioner's failure to appeal from the judgment of conviction, reasoning: "[B]ecause our resolution of the respondent's claim of procedural default is based upon the petitioner's claim of a violation of his right to counsel and whether cause and prejudice are presumed in the presence of such a violation, the procedural mechanism by which the petitioner perhaps should have raised his claims is immaterial." Id., 146–47 n.1.

We thereafter granted the respondent's petition for certification to appeal, limited to two issues: First, "[d]id the Appellate Court properly affirm the habeas court's determination that 'cause and prejudice' [are] presumed in a claim of trial court error?"[4] *Newland* v. *Commissioner of Correction*, 314 Conn. 916, 917, 100 A.3d 406 (2014). Second, "[d]id the Appellate Court properly affirm the habeas court's determination that a claim of public defender error was properly before the habeas court, and, if so, did the Appellate Court properly determine that the habeas court correctly determined that the petitioner had met his burden of proof?" Id.

In resolving the respondent's claims, we are mindful that "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Questions of law and mixed questions of law and fact [however, are subject to] plenary review." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009). Except as otherwise noted, the issues in the present case are subject to plenary review.

## II

## NATURE OF THE PETITIONER'S HABEAS CLAIMS

Ordinarily, our first task would be to consider whether the habeas court properly concluded that procedural default did not serve to bar the petitioner's claims. In the present case, however, the habeas court determined that there was no procedural default only after concluding that the petitioner had alleged public defender error. We thus begin with the respondent's contention that the petitioner did not advance a claim of public defender error. We conclude, following a close examination of the record, that the petitioner did not claim public defender error.[5] Accordingly, the Appellate Court improperly upheld the habeas court's determination that a claim of public defender error was not procedurally defaulted.

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 519–20, 876 A.2d 1178 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). In the present case, the habeas pleadings, the petitioner's filings in the habeas court, the respondent's procedural default defense and the parties' arguments at the evidentiary hearing all support the conclusion that the petitioner alleged error by the trial court and not by the public defender's office.

The petitioner's two count amended habeas petition alleged that (1) "[t]he trial court conducted an inadequate canvass of [the] petitioner prior to finding that [the] petitioner had waived his right to counsel," and (2) "[t]he trial court erroneously concluded that [the] petitioner had knowingly and intelligently waived his right to counsel." The amended petition also alleged that these errors occurred *after* the petitioner was twice denied access to the services of a public defender and before he was able to find private counsel. The pleadings contained no allegation that the decision of the public defender's office was incorrect or that the petitioner was indigent under General Statutes § 51-297, and the petitioner never attempted to amend his petition to include such allegations. See Practice Book § 23-32 ("The [habeas] petitioner may amend the petition at any time prior to the filing of the return. Following the return, any pleading may be amended with leave of the judicial authority for good cause shown."); see also Practice Book § 10-62 ("[i]n all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial"). Furthermore, because the petitioner did not allege public defender error, the respondent's return alleged procedural default based on the petitioner's failure to appeal the trial court's canvass and waiver determination to the Appellate Court, and not because he failed to appeal to the trial court from the eligibility determinations of the public defender's office under § 51-297 (g).

Thereafter, the petitioner claimed in his pretrial brief to the habeas court that the canvass was inadequate and that "the [trial] court erroneously concluded that [he] had waived his right to counsel." In support of these claims, the petitioner specifically contended, inter alia, that the trial court had failed to obtain sufficient information on the record to determine that he knowingly, intelligently and voluntarily waived his right to counsel and that the court's determination of waiver was unreasonable in the absence of a clear and unequivocal request by the petitioner to represent himself.

Similarly, at the evidentiary hearing, the petitioner's counsel not only reiterated the petitioner's claims of trial court error but repeatedly denied that the petitioner was advancing a claim that the public defender's office had made an improper indigency determination leading to the denial of his application for trial counsel. When counsel for the respondent objected on relevancy grounds to the petitioner's testimony regarding his financial position at the time he first applied for the assistance of a public defender, the petitioner's counsel explained: "There are two counts in the petition. The first, as opposing counsel has stated, is an inadequate canvass. The second count, however, is that the court erroneously concluded that the petitioner waived his right [to counsel] knowingly and voluntarily. *This evi-*

*dence we're using to show that the petitioner did not waive his right to counsel*, that he, in fact, could not afford private counsel after [he] was deemed ineligible by the public defender. *It's highly relevant to the issue of voluntariness*, and it shows that the petitioner did not have the means to hire counsel after he was denied access to the public defender, and, therefore, when he was forced to represent himself [at] trial, it was because he couldn't get another attorney." (Emphasis added.)

When the petitioner continued to testify regarding his financial status at the time he filed his original application, the respondent's counsel again objected, arguing that the financial testimony was relevant only to the indigency determination, which should have been considered in a different forum. The petitioner's counsel disagreed, explaining as follows: "[*The petitioner's*] *attempts to find counsel . . . don't go to whether the public defender determined he was eligible or ineligible. We're just going into his attempts to find counsel, which again* [*go*] *to the issue of voluntariness and do not really weigh on whether he was eligible or not. I mean it does sort of, you know, tangentially, but, specifically, his attempts to find counsel go to . . . the issue of voluntariness and not to whether the public defender is—eligible or ineligible.*" (Emphasis added.) The respondent's counsel then cited case law describing the criteria for determining whether there had been a knowing, intelligent and voluntary waiver and argued that the petitioner's financial testimony had no bearing on the trial court's waiver determination because it did not relate to the applicable criteria.[6] The petitioner's counsel countered that the testimony was relevant because the petitioner's economic circumstances and his continuing efforts to obtain counsel had a direct bearing on whether the trial court could have concluded, in light of its inadequate canvass, that he knowingly, intelligently and voluntarily waived his right to counsel.

The habeas court subsequently observed that the evidence introduced by the petitioner, which the court had allowed over the objection of the respondent's counsel, was primarily about what the public defender's office did or did not do, whereas the habeas petition was about what the trial court did or did not do. In response, the petitioner's counsel reminded the court that the petitioner's two claims related to the trial court's inadequate canvass and improper waiver determination and that the petitioner's alleged waiver had not been clear and unequivocal, as required by law. Following a lengthy discussion between the court and counsel concerning the petitioner's financial circumstances when he applied for public defender assistance and the effect of the ineligibility determination on his right to counsel, the petitioner's counsel repeated: "[*O*]*ur argument . . . is that to waive counsel,* [*it*] *doesn't really matter if you're indigent or not*; you have to make a clear,

unequivocal waiver of that, and [the petitioner] did not make that clear, unequivocal waiver." (Emphasis added.) Counsel also stated: "[T]he standard is knowingly, voluntarily, and intelligently. *I don't think that indigency is something that the court has to determine . . . .*" (Emphasis added.)

The habeas court finally acknowledged that the petitioner had pleaded his case as "an attack on the . . . voluntariness of the [waiver]" but asked the respondent's counsel what would happen if the trial court had acted properly but the public defender's office had made an improper eligibility determination. The respondent's counsel replied that, because the petitioner had never made that claim, he was unprepared to address it. The court then asked him to address whether the court could consider such a claim, as well as its merits, in his posttrial brief, since the petitioner "didn't plead it . . . ."

The respondent stated at the outset of his posttrial brief that he first would argue that the petitioner's claims were barred by procedural default and then would argue the merits of the claims the petitioner actually had raised, "specifically, claims of error on the part of the trial court." The respondent also stated that he would address the claim of public defender error that had not been raised in the amended petition but in furtherance of which the petitioner had been allowed to present evidence over the objections of the respondent's counsel at the habeas hearing and to which the respondent continued to object. The respondent added that he would end his brief by addressing the specific questions posed by the habeas court.

On the issue of public defender error, the respondent objected and separately moved to strike all materials attached to or referenced in the petitioner's posttrial brief intended to support an argument that he was indigent at the time the public defender's office determined otherwise on the same relevancy grounds that the respondent's counsel had objected to similar evidence at the habeas hearing. The respondent also argued that these references constituted inadmissible hearsay that he had not been given an opportunity to challenge. In addition, the respondent argued that the evidence had closed when the parties rested their cases at the habeas hearing and that the petitioner had not sought permission to reopen the record for the admission of additional evidence. In response to the habeas court's query regarding its authority to decide a claim of public defender error, the respondent argued that the petitioner had raised no valid claim relating to the indigency determination by the public defender's office and that the petitioner's financial position thus was irrelevant and outside the scope of his habeas petition.

In his posttrial brief, the petitioner did not directly address whether the habeas court had the authority to

consider a claim of public defender error but argued that there was no need for the habeas court to find that the petitioner was indigent in order to conclude that the trial court had conducted an inadequate canvass and made an improper waiver determination. The petitioner further argued that, even if there was such a need, the evidence introduced at the habeas hearing established his indigency at the time of the trial court's canvass and waiver determination. The petitioner concluded by citing case law from other jurisdictions and General Statutes § 51-296 for the proposition that a defendant has not necessarily waived his right to counsel when he is deemed ineligible for a public defender by the trial court and cannot afford the assistance of private counsel.

In addition to this direct and unequivocal evidence that the habeas court and the parties understood the petitioner's claims throughout the habeas proceedings as alleging trial court error, our review of the petitioner's presentation of his case also demonstrates that he did not intend to reconstruct the application process to prove public defender error in June, 2007, or in November or December, 2008, when his applications for a public defender were denied. Rather, he intended to prove trial court error in April, 2009, when the waiver canvass occurred. The petitioner did not offer copies of his applications for a public defender, testimony from the person in the public defender's office who denied either of his applications, or his own testimony regarding the interview conducted in connection with review of his financial affidavit. The petitioner did not attempt to fully reconstruct the substance of the applications; some significant information was never elicited, and other significant information was elicited only through cross-examination of the petitioner by the respondent's counsel and the habeas court's questions. For example, the petitioner offered evidence regarding his income in April, 2009, by way of his representation in the trial court waiver canvass but did not attempt to establish his income in 2007 and 2008. Although the petitioner offered evidence regarding his bank account balance in June, 2007, and December, 2008, through April, 2009, to prove that he lacked the funds to hire private counsel, information regarding the property (purchase price, fair market value, refinancing, etc.) and the posting of bond was elicited through questions by the respondent's counsel and the habeas court.

The evidence elicited regarding the procedures of the public defender's office also did not relate to the dates when the two applications were denied. The petitioner produced the 2009 public defender income guidelines; he did not produce the 2007 or 2008 guidelines. The petitioner likewise did not offer the policy manual for the public defender's office, which guides eligibility decisions, for any period. Canning offered only generalized testimony about public defender decision making

and procedures, and nothing specific to 2007 or 2008. Carlow's testimony addressed 2007 through 2009 procedures generally, at the habeas court's request. The one hypothetical question regarding the petitioner's eligibility based solely on income and the criminal charges was framed in reference to April, 2009.

In sum, the record overwhelmingly supports the conclusion that the petitioner's theory of the case was grounded in trial court error and that the evidence elicited by counsel regarding the petitioner's trial testimony as to his limited income, his lack of financial resources, and his efforts to obtain counsel was intended to support his claims concerning the trial court's allegedly inadequate canvass and improper waiver determination. In addition, the petitioner's counsel specifically stated several times during the evidentiary hearing that the petitioner's testimony regarding his financial circumstances demonstrated that his wavier was not knowing, intelligent and voluntary, and that he had been compelled to represent himself in spite of his lack of adequate resources. Counsel thus suggested that, if the trial court had conducted a proper canvass, it would have recognized the petitioner's dire situation and appointed a public defender to represent him, or would have given him more time to obtain the resources he required to obtain private counsel. Accordingly, the habeas court ignored the pleadings and the petitioner's arguments during the habeas proceedings and redefined the petitioner's claims as alleging public defender error, and the Appellate Court improperly upheld the habeas court's conclusions that the petitioner's alleged claim of public defender error was not procedurally defaulted and that the erroneous ineligibility determination had resulted in a denial of his constitutional right to the assistance of counsel.

Thus, we must reverse the judgment of the Appellate Court and direct that court to remand the case to the habeas court for it to consider whether the petitioner's claims of trial court error, which he alleged in his original petition, are procedurally defaulted and, if they are not, to consider the claims on their merits. In addition, if counsel requests, the habeas court should consider allowing an amendment to the habeas petition to include a claim of public defender error, the issue the habeas court decided but the petitioner never alleged.[7]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the habeas court for further proceedings in accordance with the preceding paragraph.

In this opinion ROGERS, C. J., and PALMER, EVELEIGH and ESPINOSA, Js., concurred.

[1] The child victim, who was related to both the petitioner and to the petitioner's then fiancée, resided with the petitioner and his fiancée in the petitioner's house. Following the allegations of sexual abuse, the petitioner moved out of the house and rented a place to live, while his former fiancée and the child remained in the house.

[2] This refinancing occurred eleven months before the petitioner represented to the trial court that he was "in the process of trying to refinance [his] property" to obtain the funds to hire counsel. In the habeas court, the petitioner testified that he had not tried to refinance the property after the January, 2007 refinancing because he "already knew that [he] . . . had maxed out what [he] was able to refinance on a percentage of its value." When the habeas court questioned the petitioner about his contrary statement to the trial court, the petitioner replied that he had misstated what he had meant to say, which was simply that he was trying to "get something where I could use the property value," and that he "was probably trying to contact people to see if [he] could even get anything else out . . . ."

[3] Canning testified that applicants who are deemed ineligible by the public defender's office are "almost universally" told of their right to appeal from that decision to the court.

[4] A more accurate representation of the Appellate Court's decision is that it upheld the habeas court's determination that cause and prejudice are presumed when a claim concerns public defender error.

[5] We note that, although the habeas court's decision rested on the propriety of the threshold determination by the public defender's office that the petitioner did not qualify under its guidelines and policies, and the petitioner's unawareness that this determination was clearly erroneous, there is no precedent for such a theory in our courts, and the petitioner has not cited any precedent from other jurisdictions that supports such a theory. Nevertheless, we need not consider whether such a theory is cognizable in light of the record in the present case, which reveals that the petitioner did not advance such a theory in the habeas court.

[6] The petitioner's counsel referred to *State* v. *Coleman*, 83 Conn. App. 672, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005), in which the Appellate Court observed that "[a] defendant has knowingly and intelligently waived the right to counsel if the trial judge finds that he: (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation." (Internal quotation marks omitted.) Id., 685, quoting *State* v. *Bangulescu*, 80 Conn. App. 26, 42–43, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003); see also Practice Book § 44-3.

[7] Although we acknowledge the complicated circumstances that led to the petitioner's lack of representation by counsel at trial, we do not endorse Justice McDonald's suggestion that the court exercise its supervisory powers over the administration of justice to adopt a prophylactic rule that would prevent trial courts from trying a defendant deemed ineligible for public defender services as an unrepresented party without first holding a hearing on the issue of indigency. Rather, we believe this issue should be addressed, if at all, by the Rules Committee of the Superior Court, which provides a more appropriate forum in which to fully and fairly consider any potential amendment to the procedural rules.